2017 AUG 30 PM

CLERK, US DISTRICT C
MIDDLE DISTRICT OF FL
JACKSONVILLE DISTR

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JOSEPH MENTER,**
**JONATHAN DANIELS,**
**JAMES DAVIS,**
on behalf of themselves and all others
similarly situated,

Case No.: 3:17-cv-1029-J- 39JBT

**PLAINTIFFS**

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

2017 AUG 30  PM 4: 01

FILED

vs.

**JUDGE MARK H. MAHON,**
in his official capacity, as Chief Judge
of the Fourth Judicial Circuit of Florida,
on behalf of himself and all other Fourth
Circuit Judges and County Judges sitting
in Duval County, Florida,
**SHERIFF MIKE WILLIAMS,**
in his official capacity,
as Sheriff of the City of Jacksonville,

**DEFENDANTS**

## COMPLAINT

### Introduction

Plaintiffs challenge in this action the use of secured money bail to detain only the most impoverished of misdemeanor arrestees. The City of Jacksonville, Florida's wealth-based pretrial detention system violates the Equal Protection and Due Process Clauses of the United States Constitution and the Florida Constitution.

By and through their attorneys and on behalf of themselves and all others similarly situated, Plaintiffs seek to enjoin the City's wealth-based post-arrest detention procedures and a declaration that Defendants cannot employ a system of wealth-based detention by imposing and enforcing

secured financial conditions of pre-trial release without an inquiry into and findings concerning the arrestee's present ability to pay.

## Nature of the Action

1.      It is the policy and practice of Defendants to refuse to release misdemeanor arrestees from custody unless they pay a monetary sum. The amount of money required is determined by a generic offense-based bail schedule or a policy and practice of Jacksonville officials imposing money bail amounts without considering the person's ability to pay. This practice results in the systemic wealth-based detention of those arrestees who are too poor to pay their money bail. Plaintiff seeks declaratory and injunctive relief prohibiting Defendants' wealth-based post-arrest detention scheme.

## Jurisdiction and Venue

2.      This is a civil rights action arising under 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United State Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

4.      Defendant Mark H. Mahon, is a duly elected circuit judge in the Fourth Judicial Circuit in Florida. Defendant Mahon is also the duly elected Chief Judge of the Fourth Judicial Circuit in Florida. Pursuant to Art. V, § 2(d) of the Florida Constitution and § 43.26, Fla. Stat. Chief Judge Mahon is responsible for the administrative supervision of the circuit courts and county courts in the Fourth Judicial Circuit of Florida. Defendant Mahon issues and maintains Administrative Orders for the Fourth Judicial Circuit.

2

5.      Defendant, Mike Williams, is the Sheriff of the City of Jacksonville. As such, Defendant Williams is the head of the Jacksonville Sheriff's Office (JSO) and possesses final policymaking authority for JSO. JSO operates the Duval County Pre-Trial Detention Facility ("PTDF") and several other detention facilities for the City of Jacksonville and Duval County, Florida. JSO is itself responsible for the vast majority of arrests within the City of Jacksonville and Duval County. JSO detains arrestees at the PTDF and several other detention facilities. The officers and employees of the JSO are authorized by Defendant Mahon's policy to accept money bail as determined by a bond schedule, release an arrestee, and set a time for an arrestee's appearance in court.

6.      After arrest, JSO employees and agents bring arrestees held on money bail to a courtroom ("J-1") inside the jail for probable cause hearings and bail setting. JSO employees and agents supervise, monitor, and give instructions to the arrestees during the hearing. JSO has knowledge that secured financial conditions of release are imposed without any inquiry into or findings concerning a person's ability to pay the amount set.

7.      The Sheriff is aware of each person who is in the jail and the basis for each inmate's detention, including whether any inmate is subject to any detainers or otherwise ineligible for pretrial release, and the amount of money bail any inmate is required to pay for immediate release. The Sheriff therefore has knowledge that the imposition of secured money bail results in systemic, wealth-based detention, and that there are people detained in the PTDF every night, charged only with misdemeanors, who would be released but for their inability to pay a money bail amount imposed pursuant to the bail schedule used in Jacksonville.

8.    JSO by policy and practice, detains arrestees too poor to afford the money bail amount imposed without inquiry into and findings concerning ability to pay and releases arrestees who pay their money bail.

9.    Defendant Mark H. Mahon, is sued as a representative party on behalf of all Circuit Judges of the Fourth Judicial Circuit and County Judges for Duval County, Florida (collectively "Defendant Judges" or "Judges").

10.    Defendant Judges make probable cause determinations and set bail for arrestees pursuant to the City's money bail schedule. The Judges do not conduct any inquiry into or make any findings concerning a person's ability to pay a money bail before imposing secured financial conditions of release, which results in the detention of only those individuals who are too poor to pay the money bail amount set. They are sued in their official capacities for declaratory and injunctive relief only.

11.    Defendant Judges, or some of them, implement JSO's post-arrest procedures, including the generally applicable misdemeanor bail schedule applied systematically to misdemeanant arrestees who are eligible.

12.    Each Judge knows that, pursuant to the bail schedule, the JSO imposes and enforces secured financial conditions or release on each individual that JSO arrests or accepts into custody, without any inquiry into or findings concerning an arrestee's present ability to pay the predetermined amount set or any other amount to be set.

13.    Each Judge is aware of the systematic custom of setting secured financial conditions of release based on the misdemeanor bail schedule without any inquiry into or make findings concerning an arrestee's present ability to pay the amount set.

4

14.     Each Judge is aware of the systematic custom of failing to inquire into and/or making findings concerning an arrestee's present ability to pay an amount to be set.

15.     Each Judge has knowledge that many individuals charged with misdemeanors are detained in the PTDF everyday solely because they are too poor to pay the money bail amounts imposed pursuant to the predetermined bail schedule set forth by a particular judge for a particular defendant.

16.     Each Judge is further aware that there is no consideration of an arrestee's ability to pay during the initial first appearance hearings.

17.     Each Judge fails and refuses to consider an arrestee's ability to pay before setting a monetary bond amount.

### Factual Background

**A.     The Named Plaintiffs Will Be Held in the PTDF Because They Are Unable to Pay the Money Bail Demanded for Their Release.**

18.     Plaintiff, Joseph Menter, is a twenty-four (24) year old, African-American male, who is a Jacksonville resident and citizen of the United States. He has been homeless since 2015, currently is unemployed, and has no assets whatsoever. Mr. Menter was arrested by JSO on August 25, 2017 on a charge of simple battery. Defendants' bond schedule provides a bond of $2,508.00 for this charge. However, due to his indigence, Mr. Menter was unable to post that bond upon booking. As a result, Mr. Menter appeared before a judge the following morning in the J-1 courtroom. When he appeared before the judge, the judge set his bond at $7,503.00. The office of the public defender was also appointed to represent Mr. Menter, a prerequisite of which is a finding of indigency. Mr. Menter currently remains incarcerated due to his financial inability to post the monetary bond set at first appearance.

19.     Plaintiff, Jonathan Daniels, is a thirty-nine (39) year old, white male, who is a Jacksonville resident and citizen of the United States. He has been homeless for the past year, currently is unemployed, and has no assets whatsoever. Mr. Daniels was arrested by JSO on August 26, 2017 on a charge of petit theft for allegedly having stolen a bicycle. Defendants' bond schedule provides a bond of $1,508.00 for this charge. However, due to his indigence, Mr. Daniels was unable to post that bond upon booking. As a result, Mr. Daniels appeared before a judge the following morning in the J-1 courtroom. When he appeared before the judge, the judge set his bond at $10,003.00. The office of the public defender was also appointed to represent Mr. Daniels, a prerequisite of which is a finding of indigency. Mr. Daniels currently remains incarcerated due to his financial inability to post the monetary bond set at first appearance.

20.     Plaintiff, James Davis, is a fifty-five (55) year old, African-American male, who is a Jacksonville resident and citizen of the United States. He is disabled, currently is unemployed, and has no assets beyond a monthly Social Security Disability payment, which is consumed by his rent and costs of other basic living necessities. Mr. Davis was arrested by JSO on August 26, 2017 on a charge of simple battery. Defendants' bond schedule provides a bond of $2,508.00 for this charge. However, due to his indigence, Mr. Davis was unable to post that bond upon booking. As a result, Mr. Davis appeared before a judge the following morning in the J-1 courtroom. When he appeared before the judge, the judge set his bond at $5,003.00. The office of the public defender was also appointed to represent Mr. Davis, a prerequisite of which is a finding of indigency. Mr. Davis currently remains incarcerated due to his financial inability to post the monetary bond set at first appearance.

**B.      Defendant's Wealth-Based Detention System Detains Arrestees Who Cannot Pay Their Money Bail Amount, While Releasing Those Who Can Pay.**

21.     Defendants use a predetermined money bail schedule for certain enumerated misdemeanors promulgated through administrative order by the judges, to determine money bail for everyone who is arrested for certain misdemeanors. *See* Exhibit 1, Misdemeanor Bail Schedule. The Misdemeanor Bail Schedule is the exclusive means of setting bail "unless otherwise directed by the judge(s)." The amount then set by the judge(s) is arrived at arbitrarily without an inquiry into the ability of the particular defendant to pay.

22.     When a person is arrested in the City of Jacksonville, he or she will be taken to the PTDF by the arresting authority.

23.     Once at the PTDF, the person is processed by the staff to determine their indigency and their eligibility for an appointment for a public defender. All of the Plaintiffs herein have been determined to be indigent prior to their appearance before a judge.

24.     If a person is eligible for a bond set by the predetermined bond schedule, he or she can be admitted to bail immediately upon payment of the bond amount.

25.     Persons who were not released pursuant to the predetermined bond schedule, appear within twenty-four (24) hours after arrests for a first appearance hearing held in courtroom J-1 of the PTDF.

26.     Upon their appearance in J-1, the persons are appointed a public defender and a judge sets the monetary bond amount, without inquiry as to their ability to make a money bail bond.

27.     At no time does any person perform any inquiry into an arrestee's ability to pay the money bail amount written on the predetermined bond schedule or before setting any bond amount on cases that are not prescribed by the predetermined bond schedule.

7

28. From the moment a secured bail amount is imposed, all misdemeanor arrestees are eligible for release, if they can pay the bail amount listed in the predetermined schedule or otherwise set by the Defendant Judges, unless they are subject to certain holds for instance, e.g. immigration or probation violations.

29. All individuals, including Defendant Judges, know whether a financial condition of release is the only reason a person is being detained.

30. The money bail is the moment of differential treatment: a person with financial resources will be released almost immediately after bail is imposed, but Defendants will require the detention of a person who cannot afford to pay his or her bail. This policy or practice results in systemic and automatic wealth-based detention in the PTDF.

31. The policies heretofore described have consistently, for years, resulted in the needless and devastating jailing of impoverished people accused of misdemeanor offenses. Many misdemeanor arrestees were booked into the PTDF because they were unable to immediately pay for their release. Other arrestees with financial means were able to pay their predetermined money bail and obtain their release immediately. Those with their money bail amounts set by a judge at first appearance in J-1 are able to pay their money bail and obtain their release.

32. Many misdemeanor arrestees are held in the PTDF because of their inability to afford the financial conditions set for their release.

33. In no case is a money bail determined with consideration for an arrestee's ability to pay, and in no case, does a Judge make an inquiry into or findings concerning a person's present ability to pay.

34. At first appearance hearings, the Judge calls an individual's name and reads the charge. That individual gets up from the group of arrestees and stands. The Judge decides whether

there is probable cause, finding probable cause in almost every case, and, almost always, sets money bail.

36. The process of setting bail and finding probable cause is a rote exercise, and the hearings last a few minutes as a matter of routine.

36. As a matter of policy and practice, Judges make no attempt to determine an arrestee's financial situation, and they make no inquiry into or findings concerning an arrestee's ability to pay the money bail amount that they impose.

37. In addition to making no affirmative inquiry into or findings concerning ability to pay, Judges rarely hear any argument that an arrestee raises about his or her ability to pay.

38. In the City of Jacksonville, money bail is imposed based solely on the alleged offense and the person's criminal history, among other factors, but without reference to the person's ability to pay, resulting in the detention of arrestees based on their poverty.

39. Judges sometimes release arrestees on "personal recognizance" which means release without any secured financial conditions. Release on recognizance is based on the arrestee's criminal charge and criminal history -- they have nothing to do as a matter of policy and practice with an arrestee's indigence or ability to pay a money bail.

40. Release on recognizance bonds are not based on any inquiry into any ability to pay.

41. The first appearance hearing is the probable cause hearing and for those that were unable to purchase their release from the standard bond list will be taken to the J-1 courtroom located in the bottom floor of the PTDF, usually within twenty-four (24) hours of arrest. Probable cause hearings are conducted two times a day, in the morning and in the afternoon, 365 days a year.

42.     Detained individuals are assigned public defenders at the first appearance hearing, and at this hearing have a bond set. In the vast majority of cases, it is money bail.

43.     Prior to attendance at the first appearance hearing, arrestees have their indigency determined and the court appoints the public defender for those arrestees determined to be indigent. The public defender is appointed on the majority of the cases.

44.     One of the effects of the City of Jacksonville's post-arrest detention, is to coerce and process large numbers of guilty pleas prior to any person conducting any legal or factual investigation into the charges, let alone the complete and zealous investigation and defense required by professional standards and the Sixth Amendment to the United States Constitution.

45.     Defendant Judges – and every other actor in the City's post-arrest system (as well as anyone who has observed first appearances) – know that many of the detained individuals who appear in front of them charged with misdemeanors are being held in jail solely because they are too poor to pay the money bail amount set by the predetermined schedule. They all have access to other information about other holds that might be keeping the person in jail.

46.     The Judges and JSO employees and agents have knowledge that in scores of cases every day, there is no reason for a person's detention other than the person's inability to make the monetary payment set.

47.     JSO employees and agents also observe the first appearance hearings, which occur twice every day, and witness the Defendant Judges routinely failing and refusing as a matter of policy and practice to consider an ability to pay or alternative to secured financial conditions when imposing secured financial conditions of release.

48.     If a defendant does not plead guilty at their first appearance, a defense attorney can file a motion for reduction of the money bail amount. It typically takes several days for that motion

to be heard. Thus, in a typical case, it can take over a week after arrest for a person who cannot afford the predetermined money bail amount or the amount set at first appearance to obtain any meaningful review of that amount.

49.     The Plaintiffs would not have to endure continued incarceration if they were able to afford the amount of money required by the Defendants.

50.     Arrestees are given a right to release pending trial, but Defendant's wealth-based detention system conditions their release on their ability to afford money bail, thus tying their pre-trial freedom to their wealth status.

51.     As a matter of policy and practice, when a new arrestee is brought to the PTDF, City employees inform the arrestee that they will be released from jail upon payment of the money bail amount set by the bail schedule for certain misdemeanors. The arrestee is told that they will remain in jail if they are not able to make that payment.

52.     It is the policy and the practice of the JSO to release only those arrestees who pay their money bail amount.

53.     It is the policy and the practice of the JSO to detain individuals who do not pay their money bail amount. Before an individual's probable cause hearing, it is the policy and the practice of the JSO to detain the individual based on a money bail amount set pursuant to a predetermined bail schedule. After the first appearance hearing, it is the policy and the practice of the JSO to detain individuals based on a money bail amount set by the Defendant Judges.

54.     If a person cannot pay his or her money bail after their first court appearance before a judge, it is the policy and the practice of the JSO to continue to detain that individual unless and until they make the required monetary payment.

55.    Under Defendants' wealth-based procedures, those wealthy enough to pay are released from PTDF. Some poorer arrestees are left to languish in jail until the resolution of their case.

<strong><u>Class Action Allegations (Plaintiff's Class)</u></strong>

56.    The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

57.    A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class members can challenge the Defendants' unlawful wealth-based post-detention scheme.

58.    This action is brought and may be properly maintained as a class action pursuant to Rule 23(a)(1) - (4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

59.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

60.    Plaintiffs propose a single Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: All misdemeanor arrestees who are or will be detained in the custody of JSO for any amount of time after arrest because they are unable to pay money bail.

**A.    Numerosity (Fed. R. Civ. P. 23(a)(1))**

61.    The average daily population of misdemeanor arrestees being held on money bail they could not afford is several individuals, exceeding 150 per day.

62.    Arrestees are held in jail for varying lengths of time depending on how long it takes them to make the cash payment that is required for their release.

12

63.    Some arrestees are able to pay immediately for their release. Others are forced to wait one or two days until they or family members can make the payment. Others will never be able to come up with any amount of money to pay for their release.

64.    The number of current and future arrestees subject to this policy – if it is not enjoined – numbers well into the scores. Further, misdemeanor arrestees are jailed at the PTDF every day who are detained because they are unable to post bail. As such, joinder of all Class members is impractical.

**B.    Commonality (Fed. R. Civ. P. 23 (a)(2))**

65.    The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. The named Plaintiffs seek relief concerning whether the Defendants' policies, practices, and procedures violate the rights of the Class members and relief mandating that the Defendants change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

66.    Common legal and factual questions arise from one central scheme and set of policies and practices: the Defendants' post-arrest wealth-based detention scheme. The Defendants operated this scheme openly and in materially the same manner every day. The material components of the scheme do not vary from Class member to Class member, and the Class members are entitled to the constitutional relief that they seek. Among the most important, but not only, common questions of fact are:

   a.  Whether the Defendants have a policy and practice of using a predetermined schedule to determine the amount of money required to secure post-arrest release;
   b.  Whether the Defendants require that scheduled amount of money to be paid up front before releasing a person from the jail;
   c.  Whether the Defendants, at any stage in the post-arrest process, inquire into a person's ability to pay the predetermined amount of money and make findings concerning an arrestee's present ability to pay amy amount set; and

d. What standard post-arrest procedures the Defendants perform on misdemeanor arrestees; for example, whether Defendants use any other alternate procedures for promptly releasing people determined otherwise eligible for release, but who are unable to afford a monetary payment.

67. Among the most important common questions of law is:

a. Whether a secured "bail schedule" setting generic amounts of money required up front to avoid post-arrest detention without any inquiry or findings into a person's present ability to pay the amount set violates the Fourteenth Amendment's Due Process and Equal Protection provisions.

## C.    Typicality (Fed. R. Civ. P. 23(a)(3))

68. The named Plaintiffs' are typical of the claims of the other members of the Class, and they have the same interests in this case as all other Class members. Each Class member is threatened with imminent and/or ongoing confinement in jail because he or she cannot afford to pay a standardized bail amount. The answer to whether the Defendants' wealth-based detention scheme is unconstitutional will determine the claims of the named Plaintiffs and every other Class member.

69. If the named Plaintiffs succeed in the claim that the Defendants' policies and practices concerning post-arrest detention violate their constitutional rights, that ruling will apply equally to every member of the Class.

## D.    Adequacy (Fed. R. Civ. P. 23(a)(4))

70. The named Plaintiffs are adequate representatives of the Class because their interest in the vindication of the legal claims that they raise is entirely aligned with the interests of the other Class members, each of whom has the same basic constitutional claims. They are members of the Class, and their interests do not conflict with those of the other Class members.

71.     There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-freedom post-arrest detention system.

72.     Plaintiffs are represented by attorneys from Sheppard, White, Kachergus & DeMaggio, P.A. who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the Defendants' scheme and the relevant constitutional and statutory law. Counsels' relevant qualifications are more fully set forth in the forthcoming Motion for Class Certification, filed in compliance with Rule 4.04(b), Local Rules for the Middle District of Florida.

73.     The combined efforts of Class counsel have so far included extensive investigation into fixed money bail schemes over a period of months, including numerous interviews with witnesses, court employees, jail inmates, families, judges, attorneys practicing in courts throughout the city, community members, statewide experts in the functioning of state and local courts, empirical researchers, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

74.     Class counsel have a detailed understanding of state law and practices as they relate to federal constitutional requirements. Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of lawful options in practice for municipalities.

75.     As a result, counsel have devoted enormous time and resources to becoming intimately familiar with Defendants' scheme and with all of the relevant state and federal laws and procedures that can and should govern it. Counsel have also developed relationships with many of the individuals and families victimized by unlawful wealth-based pretrial detention practices. The

interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.    Rule 23(b)(2)**

76.    Class action status is appropriate because the Defendants, through the policies, practices, and procedures that make up its wealth-based post-arrest detention scheme, have acted in the same unconstitutional manner with respect to all Class members. The Defendants apply and enforce a wealth-based system of pretrial justice: some arrestees can purchase their immediate release, while other arrestees must remain in jail solely because they cannot pay.

77.    The Class therefore seeks declaratory and injunctive relief that will prevent Defendants from detaining arrestees who cannot afford cash payments. Because the putative Class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every other member of the Class A, Rule 23(b)(2) Class Action is appropriate and necessary.

78.    Injunctive relief compelling the Defendants to comply with these constitutional rights will similarly protect each member of the Class from being subjected to the Defendants' unlawful policies and practices. A declaration and injunction stating that Defendants cannot detain arrestees due to their inability to make a monetary payment would provide appropriate relief with respect to the Class as a whole.

<u>**Class Action Allegations (Defendant's Class)**</u>

79.    The named plaintiffs seek to sue Defendant Judge Mahon as a class representative on behalf of himself and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

80.    A class action is a superior means, and the only practical means, by which the named Plaintiffs and unknown class members can challenge the Judges unlawful wealth-based post-detention scheme.

81.    This action is brought and may be properly maintained as an action against a class of defendants pursuant to Rule 23(a)(1) -(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. Alternatively, this action may also be properly be brought pursuant to Rule 23(a)(1)-(4) and Rule 23(b)(1) of the Federal Rules of Civil Procedure.

82.    The proposed class of Defendants satisfy the numerosity, commonality, typicality, and adequacy requirements of those provisions.

83.    Plaintiffs propose to join the Defendant Judges as a single Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: All circuit judges of the fourth judicial circuit in and for Duval County and county judges for Duval County.

**A.    Numerosity (Fed. R. Civ. P. 23(a)(1))**

84.    There are currently twenty-six (26) sitting circuit judges serving the fourth judicial circuit and for Duval County. There are currently seventeen (17) county judges serving Duval County. There is currently one (1) judicial vacancy for a county court judgeship in Duval County.

85.    Judges are assigned to preside over first appearance proceedings in "J-1" on a rotating weekly basis, with a different judge assigned to first appearance hearings taking place on the weekends.

86.    The number of current and future judges in the Fourth Circuit in and for Duval County is too large to join all members of the representative class. Furthermore, these Defendants' responsibilities and duties as sitting judges for the Fourth Judicial Circuit and Duval County make their individual joinder to this lawsuit contrary to judicial economy and impractical.

17

**B.    Commonality (Fed. R. Civ. P. 23(a)(2))**

87.    The relief sought is common to all members of the Defendant Class, and common questions of law and fact exist as to all members of the Defendant Class. The Plaintiffs seek relief concerning policies, practices, and procedures violative of their constitutional rights carried out by the Judges who collectively and individually participate in a scheme that results in a violation of Plaintiffs' constitutional rights.

88.    Common legal and factual questions arise from one central scheme and set of policies and practices: The Defendants' post-arrest wealth-based detention scheme. The Judges operated this scheme openly and in materially the same manner every day. The material components of the scheme do not vary from Judge to Judge. Amongst the most important, but not only, common questions of fact shared in the dispute against the Judges are:

   a.  Whether the Judge Defendants, at any stage in the post arrest process, inquire into a person's ability to pay the amount of money set during the first appearance hearing and make any findings concerning an arrestees' present ability to pay any amount set;
   b.  Whether the Judge Defendants, at any stage in the post arrest process, consider argument from arrestees regarding their present ability to pay the amount of bond set by the pre-determined bond schedule or during first appearance hearings; and
   c.  Whether the Judge Defendants, during first appearance hearings, set bond amounts based solely on factors such as the nature of the charges and prior criminal history, rather than the arrestees present ability to pay.

89.    Among the most important common questions of law are:

   a.  Whether setting bond according to a pre-determined "bail schedule" or based on a first appearance hearing without any inquiries or findings into a person's present ability to pay the amount set violates the Fourteenth Amendment's Due Process and Equal Protection Provisions; and
   b.  Whether setting bond according to a pre-determined "bail schedule" or based on a first appearance hearing without any inquiries or findings into a person's present ability to pay the amount set violates the Florida Constitution.

**C.    Typicality (Fed. R. Civ. P. 23(a)(3))**

18

90.     The claims against the named Defendant are typical of the claims against the other members of the Defendant Class. All Judges operate under the same system that is infected by the same constitutional flaws. The answer to whether the Defendant's wealth-based detention scheme is unconstitutional will determine the claims of the Plaintiffs against every other Class Defendant.

91.     If Plaintiffs succeed in the claim that the Judges policies and practices concerning post-arrest detention violate their constitutional rights, that ruling will apply equally to every member of the Defendant class.

**D.     Adequacy (Fed. R. Civ. P. 23(a)(4))**

92.     Judge Mark Mahon is an adequate representative of the Defendant class. Judge Mahon currently serves as the Chief Judge of the Fourth Judicial Circuit. As such, his interests are aligned with the interest of the other Judges serving within his Circuit in and for Duval County, each of whom engaged in the same pay-for-freedom post-arrest detention system.

93.     There are no known conflicts of interest among members of the proposed Defendant class.

94.     On information and belief, Judge Mahon will select representation who will have the experience and qualifications necessary to represent the interests of the Judge Defendants.

**E.     Rule 23(b)(2)**

95.     Class action status is appropriate under Rule 23(b)(2), because the Judges, through the policies, practices, and procedures that make up the wealth-based post-arrest detention scheme, have acted in the same unconstitutional manner.

96.     The Plaintiffs seek declaratory and injunctive relief that will prevent the Judges from detaining arrestees who cannot afford cash payments. Because the Plaintiff Class challenges the Judge's scheme as unconstitutional through declaratory and injunctive relief that would apply

19

the same relief against every member of the Defendant Class, a Rule 23(b)(2) class action is appropriate and necessary.

**F.      Rule 23(b)(1)(B)**

97.      In the alternative, Plaintiffs contend that certifying the Defendant Class is appropriate under Rule 23(b)(1). The remedy Plaintiffs seeks is declaratory and injunctive relief that would apply across the board to the entire wealth-based post-arrest detention scheme in which all Judges in the Fourth Judicial Circuit participate.

98.      As such, an order granting Plaintiffs relief against any Judge Defendant would be dispositive of the interests of unnamed Judges who participate in the same bail system if class certification was not granted.

**G.      Bilateral Certification**

99.      Certification of the Plaintiff Class and Defendant Class is appropriate notwithstanding the fact that every arrestee in the Plaintiffs class is not bringing an individual claim against every Judge in the Defendants Class. The Plaintiffs seek to enjoin a systemic defect in the bail-setting system throughout the entire fourth judicial circuit in Duval County. Every Class Plaintiff has suffered the same constitutional injury under this system and every Class Defendant has participated in this system.

**COUNT I**

**(Fourteenth Amendment – Equal Protection and Due Process)**

100.      Plaintiffs incorporate by reference the allegations in paragraphs 1 through 99.

101.      The Fourteenth Amendment's equal protection and due process clauses prohibit jailing a person because of his or her inability to make a monetary payment. Defendants violate Plaintiffs' fundamental right to pre-trial liberty by enforcing against them a system of wealth-based

20

detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without any inquiry into or findings concerning their present ability to pay.

WHEREFORE, Plaintiffs request that this Court issue the following prospective relief against the Defendants, who are all government actors, pursuant to 42 U.S.C. § 1983 and, independently, directly under the Fourteenth Amendment of the United States Constitution, so that they cease ongoing constitutional violations:

   a.   A declaratory judgment that the Defendants violate the named Plaintiffs' and Class members' constitutional rights by operating a system of wealth-based detention that keeps then in jail solely because they cannot afford to pay money bail amounts imposed without providing any inquiry into or findings concerning their present ability to pay;

   b.   A declaratory judgment that the Defendants violate the named Plaintiffs' and Class members' constitutional rights by setting secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

   c.   An order preliminarily enjoining the Defendants from imposing secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

   d.   Any other order and judgment this Court deems necessary to preliminarily and permanently enjoin Defendants – whether acting on behalf of the State, the County, or some other government entity – from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into and making findings concerning the person's present ability to pay the sum; and

   e.   An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

## COUNT II

### (Florida Constitution – Article I, Sections 9 and 14)

102.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 99.

21

103.    Article I, Section 9 of the Florida Constitution provides in pertinent part: "no person shall be deprived of life, liberty or property without due process of law ..."

104.    Article I, Section 14 of the Florida Constitution provides in pertinent part: "unless charged with a capital offense punishable by life imprisonment and the proof of guilt is evident and the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions."

105.    The above-referenced Florida Constitution sections prohibit jailing a person for his or her inability to make a monetary payment. Defendants violate Plaintiffs' constitutional right to pretrial liberty by enforcing against them a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without any inquiry into or findings concerning their present inability to pay.

WHEREFORE, Plaintiffs request that this Court issue the following prospective relief against Defendants under Article I, §§ 9 and 14 of the Florida Constitution so that they cease ongoing constitutional violations:

    a.    A declaratory judgment that the Defendants violate the named Plaintiffs' and Class members' constitutional rights by operating a system of wealth-based detention that keeps then in jail solely because they cannot afford to pay money bail amounts imposed without providing any inquiry into or findings concerning their present ability to pay;

    b.    A declaratory judgment that the Defendants violate the named Plaintiffs' and Class members' constitutional rights by setting secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

    c.    An order preliminarily enjoining the Defendants from imposing secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set; and

d.  Any other order and judgment this Court deems necessary to preliminarily and permanently enjoin Defendants – whether acting on behalf of the State, the County, or some other government entity – from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into and making findings concerning the person's present ability to pay the sum.

Respectfully submitted,

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:    (904) 356-9667
Email:        sheplaw@att.net
COUNSEL FOR PLAINTIFFS