# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JOSEPH MENTER,
JONATHAN DANIELS, and
JAMES DAVIS,
on behalf of themselves and
all others similarly situated,

       PLAINTIFFS,             Case No. 3:17-cv-1029-J-39JBT

vs.

JUDGE MARK H. MAHON,
in his official capacity, as Chief Judge
of the Fourth Judicial Circuit of
Florida, on behalf of himself and all
Other Fourth Circuit Judges and
County Judges sitting in Duval County,
Florida, SHERIFF MIKE
WILLIAMS, in his official capacity
As Sheriff of the City of
Jacksonville,

       DEFENDANTS.

---

# BRIEF OF *AMICI CURIAE* ROCHE SURETY AND CASUALTY COMPANY, INC. AND ROCHE SURETY, INC., IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

## CORPORATE DISCLOSURE STATEMENT
## <u>PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 26.1</u>

Neither Roche Surety and Casualty Company, Inc., nor Roche Surety, Inc., has a parent corporation. No publicly held corporation holds any stock in either Roche Surety and Casualty Company, Inc., or Roche Surety, Inc.

4826-8892-2195.3

# TABLE OF CONTENTS

IDENTITY OF *AMICI CURIAE* AND STATEMENT OF INTEREST .......................... 1

SUMMARY OF ARGUMENT .................................................................... 1

ARGUMENT ...................................................................................... 3

I.   BAIL IS A CONSTITUTIONALLY ENSHRINED AND
     HISTORICALLY PROVEN METHOD OF ASSURING COURT
     APPEARANCES ............................................................................ 3

     A.   American Colonists Brought the English Institution of Bail to This
          Nation ................................................................................... 3

     B.   The Modern Bail Bond System is an Efficient System, Proven to
          Secure Appearance of Defendants .............................................. 6

II.  JACKSONVILLE'S MISDEMEANOR BAIL SCHEDULE IS
     CONSTITUTIONAL ....................................................................... 8

     A.   U.S. Courts Uniformly Hold That There is No Indigence Exception
          to Bail ................................................................................... 8

     B.   The Predominance of Individualized Issues Means the Plaintiffs'
          Claims are Not Suitable for Class Treatment ............................... 11

CONCLUSION .................................................................................... 12

4826-8892-2195.3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bonner v. City of Prichard*,
  661 F.2d 1206 (1981) (*en banc*) ...................................................................9

*Carlson v. Landon*,
  342 U.S. 524 (1952)...................................................................................8

*Collins v. Ainsworth*,
  382 F.3d 529 (5th Cir. 2004) ...................................................................11

*County of Riverside v. McLaughlin*,
  500 U.S. 44 (1991)...................................................................................10

*United States ex rel. Fitzgerald v. Jordan*,
  747 F.2d 1120 (7th Cir. 1984) ...................................................................9

*Ex parte Milburn*,
  34 U.S. (9 Pet.) 704 (1835)........................................................................4

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ...............................................................12

*Pugh v. Rainwater*,
  572 F.2d 1053 (5th Cir. 1978) ..............................................................9, 10

*Reese v. United States*,
  76 U.S. (9 Wall.) 13 (1869) ....................................................................4, 5

*San Antonio Indep. School Dist. v. Rodriguez*,
  411 US. 1 (1973)......................................................................................10

*United States v. Feely*,
  25 F. Cas. 1055 (C.C.D. Va. 1813)............................................................4

*United States v. McConnell*,
  842 F.2d 105 (5th Cir. 1988) .....................................................................9

*United States v. Ryder*,
  110 U.S. 729 (1884)...................................................................................3

4826-8892-2195.3

*United States v. Salerno*,
481 U.S. 739 (1987)...............................................................................6, 9

*United States v. Van Caester*,
319 F. Supp. 1297 (S.D. Fla. 1970) .....................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (U.S. 2011).................................................................12

*Walls v. Genung*,
198 So. 2d 30 (Fla. 1967)......................................................................4

*Younger v. Harris*,
401 U.S. 37 (1971)................................................................................8

**Statutes**

Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*..................................5

Bail Reform Act 18 U.S.C. § 3142 .............................................................9

Section 648.24, *Fla. Stat.*(2002) ...............................................................5

**Other Authorities**

Fourth Amendment ....................................................................................10

Eighth Amendment .........................................................................2, 3, 8, 9

*An Analysis of the Financial Impact of Surety Bonding on Aggregate and
Average Detention Costs and Cost Savings in the State of Florida for
2010, available at* http://www.rochesurety.com/Special_Report.pdf.................7

*The Fugitive: Evidence on Public versus Private Law Enforcement from Bail
Jumping*, 47 J.L. & Econ. 93, 118 (2004)...........................................6

Federal Rule of Civil Procedure 23(a)(2) ..................................................12

Federal Rule of Civil Procedure 23(a)(3) ..................................................12

Fla. Const. art. I §14................................................................................3, 8

Florida Bail Agents Association, *Statistics, available at*
https://bailbondcontinuingeducation.com/statistics/............................6

Florida Constitution .................................................................................3, 8

4826-8892-2195.3

*Proposed Maryland Pretrial Release Services Program*, Regional Economic Studies Institute, Towson University, at 10 (March 11, 2014), *available at* http://bit.ly/1ttuwFn .........................................................................................................8

S. Rep. No. 98–225 ...............................................................................................................5

William F. Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 77 (1977)...........................................................................................................................3

4826-8892-2195.3

## IDENTITY OF *AMICI CURIAE* AND STATEMENT OF INTEREST

Roche Surety and Casualty Company, Inc. and Roche Surety, Inc. ("*amici curiae*") are Florida-based, family-owned Florida corporations in their fourth decade of the service business of providing bail bonds to secure the freedom and subsequent court appearances of citizens who are accused, but not convicted, of a crime. *Amici curiae* have a strong interest in this case because the case purports to affect the use of bail schedules by the City of Jacksonville to permit the fair and prompt release of defendants, without waiting to appear before a judge, and to ensure the appearance of those defendants at subsequent hearings. The institution of bail predates the founding of this nation and courts have consistently upheld its legality and purpose.[1]

Defendants – the Chief Judge and the Sheriff – and Plaintiffs stated to the undersigned, through their respective counsel, that they do not oppose the filing of this *amici* brief.[2]

## SUMMARY OF ARGUMENT

Two glaring flaws highlight why this Complaint must be dismissed. The first is Plaintiffs' decision to attack the Jacksonville bail schedule on an as-applied constitutional basis. Plaintiffs do not attack the constitutionality of the plain wording of the bail schedule,

---

[1] No party nor its counsel authored this brief, in whole or in part, or contributed any money intended to fund the preparation or submission of this brief. No person other than *amici curiae* contributed money that was intended to fund the preparation or submission of this brief.

[2] *Amici* hereby adopt and assert the motions to dismiss the Complaint filed by Defendants for the reasons stated in the memoranda of law accompanying those motions.

1

because they cannot. Plaintiffs thereby concede that, even if they allege a valid claim –
which they do not – it sounds only in an as-applied analysis.

The second fatal flaw is that individualized particulars of Plaintiffs' bail
determinations overwhelm Plaintiffs' effort to plead common questions of law and fact.
Accordingly, even if Plaintiffs allege a valid claim – which they do not – the claim is not
suitable for class action treatment.

The institution of bail predates the Republic and is enshrined in the Eighth
Amendment of the U.S. Constitution. Plaintiffs cite to no federal or state statute or case
decision that authorizes an indigence exception to bail, because no such exception exists.
Detention for up to 24 hours while a misdemeanor defendant who cannot post cash bail waits
to see a judge, while possibly an inconvenience to Plaintiffs, does not even approach the
level of a Constitutional wrong. Not even the right to a probable cause hearing, which the
Constitution _does_ guarantee every defendant, forbids such a short wait to see a judge – for a
probable cause hearing, up to 48 hours is allowed.

By asking this Court to limit the discretion of state court judges, the Plaintiffs seek to
disrupt the comity between state and federal sovereigns, and to impose a rule that has no
support in any federal or state constitution, statute, or court decision. No law requires that
bail be made available to every defendant, and no law requires that bail be affordable to a
defendant. This Court should dismiss the Complaint.

## ARGUMENT

## I.     BAIL IS A CONSTITUTIONALLY ENSHRINED AND HISTORICALLY PROVEN METHOD OF ASSURING COURT APPEARANCES

Bail is older than this country itself, and it serves laudable purposes. Bail balances the interests of society, the justice system, and individuals accused of wrongdoing, by providing both freedom after arrest and before trial, along with time-proven incentives to secure the appearance of those individuals at court hearings.

### A.     American Colonists Brought the English Institution of Bail to This Nation

The Eighth Amendment mandates that "excessive bail shall not be required." U.S. Const. amend. VIII. And, the Florida Constitution requires that every defendant "shall be entitled to pretrial release *on reasonable conditions*."[3] Fla. Const. art. I § 14. These foundational documents secure the bedrock point that bail by itself is a constitutional system designed to balance the freedom interest of a defendant who has not yet been convicted of a crime with society's interest in having the defendant appear in court.

Colonial Virginia passed its first bail statute in 1645. William F. Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 77 (1977). The colony changed its system in 1705 to keep accused persons in jails closer to their homes for at least 20 days following arrest, to increase the opportunity for friends and family to raise money for a surety. *Id.* at 78. After the founding of this nation, bail became an integral part of this country's legal system. As the Supreme Court said in 1884: "[T]he object of bail in criminal cases is to secure the appearance of the principal before the court for the purposes of public justice." *United States v. Ryder*, 110 U.S. 729, 736 (1884).

---

[3]  All emphasis in this brief is added unless otherwise indicated.

Multiple federal and state cases have expounded upon and explained this tradition. Chief Justice John Marshall noted in a case decided while he rode circuit that "[t]he object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty." *United States v. Feely*, 25 F. Cas. 1055, 1057 (C.C.D. Va. 1813).

In *Ex parte Milburn*, 34 U.S. (9 Pet.) 704, 710 (1835), the Supreme Court noted that "[a] recognizance of bail, in a criminal case, is taken to secure the due attendance of the party accused, to answer the indictment, and to submit to a trial, and the judgment of the court thereon." The Court went on to note that bail "is not designed as a satisfaction for the offence, when it is forfeited and paid; but as a means of compelling the party to submit to the trial and punishment, which the law ordains for his offence."

Florida courts have echoed these historic affirmations and understandings of the system of bail. In rejecting a constitutional challenge to the requirement for bail on the basis of wealth in 1967, the Florida Supreme Court noted that ruling otherwise "would make of indigency a pass-key to all places of restraint to which he might be committed prior to trial." *Walls v. Genung*, 198 So. 2d 30, 31 (Fla. 1967). "[T]o accede to petitioner's claim would be to disregard the state's right to custody or control of an accused, essential for the protection of society." *Id.* at 30.

Courts also have explicitly recognized and approved the role of private sureties in the provision of bail: "By the recognizance the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing . . . ." *Reese v. United States*, 76 U.S. (9 Wall.) 13, 21 (1869). Thus, private sureties – such as *amici* – play a vital role in

4

securing the appearance of the defendant. The *Reese* Court went on to note: "[H]e is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and to the extent necessary to accomplish this, may restrain him of his liberty." *Id.*

Florida statutes have codified the principle by which the bail bond agent is responsible for the appearance of the defendant. Indeed, the Florida Legislature has decreed in a "Declaration of public policy" that it is "the public policy of this state and the intent of the Legislature that a bond for which fees or premiums are charged . . . shall be construed as a commitment by and obligation upon the bail bond agent to ensure that the defendant appears at all subsequent criminal proceedings." *Fla. Stat.* § 648.24 (2002). Chapter 648 lays out detailed requirements for the licensing, regulation, education, operations, and qualification of bail bond agents, who operate under the Florida insurance code and answer to the Florida Department of Financial Services.[4]

At the federal level, Congress passed the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, after the Justice Department recommended preserving money bail as an historical and effective method to deter flight and to secure re-appearance. S. Rep. No. 98–225, at 11; *see*

---

[4] In a proverbial nutshell, here are the basics of how bail operates: A defendant who is assessed a cash bail in a fixed sum contacts a bail bond agent, either directly or through a friend, attorney, or family member. The agent, acting as the representative of an insurer, underwrites a bond payable to the court for the entire amount of the bail. For this service, the agent charges the defendant a fee – usually a flat percentage of the entire bond, often 10%. The defendant then is released from jail pending trial. If the defendant fails to appear for a hearing or trial, the court will order the entire amount of the bond forfeited, or "escheated," to the court registry. To obtain return of the funds, the bail agent is empowered to locate and detain the defendant and provide him or her to the court.

4826-8892-2195.3

*also United States v. Salerno*, 481 U.S. 739 (1987) (affirming the constitutionality of the Bail Reform Act).

These authorities show that bail is a legal and historic method of balancing the interests of society, the judicial system, and a defendant who only has been accused of a crime, by allowing for release pending trial and providing incentives for the defendant's appearance at court hearings and trial.

**B.    The Modern Bail Bond System is an Efficient System, Proven to Secure Appearance of Defendants**

Besides enjoying legal and historical recognition, bail <u>*works*</u>.  Plaintiffs appear to have no answer to this point.  The modern commercial bail system strikes a proper balance. By charging a fraction of the face amount of a bail, the bail bondsman allows a defendant to go free before trial and to assist counsel in preparation of his or her defense.  At the same time, the bail bondsman assumes responsibility for guaranteeing the defendant's appearance at hearings and trial.  The upshot is more freedom and fewer missed court dates.

"Defendants released on surety bond are 28 percent less likely to fail to appear than similar defendants released on their own recognizance, and if they do fail to appear, they are 53 percent less likely to remain at large for extended periods of time."  Eric Helland & Alexander Tabarrok, *The Fugitive: Evidence on Public versus Private Law Enforcement from Bail Jumping*, 47 J.L. & Econ. 93, 118 (2004).  This research is backed up by industry experience:  The private bail industry has an appearance rate approaching 98%.  Florida Bail Agents Association, Statistics (*click on*  https://bailbondcontinuingeducation.com, then *click on* "Statistics.")  Moreover, bail is the only form of pretrial release that imposes no costs either on the sheriff or the taxpayer.  *Id.*

6

In 2011, *amicus* Roche Surety & Casualty Co., Inc., in cooperation with University of Tampa Professor David Krahl, Ph.D., completed a study which confirms the efficacy and cost savings provided by the bail system. David E. Krahl, Ph.D., *An Analysis of the Financial Impact of Surety Bonding on Aggregate and Average Detention Costs and Cost Savings in the State of Florida for 2010*, available at http://www.rochesurety.com/Special_Report.pdf.

Based on the analysis of nearly 53,000 cases, and an array of secondary data sources, the study made two principal findings: The use of surety bonding by a single surety bonding company – *amicus* Roche Surety & Casualty – saved county governments in the state of Florida over $400 million dollars in detention costs by admitting defendants to surety bonding instead of keeping them in pretrial detention. Moreover, the costs to Florida counties to build additional jail cells or dormitory-style beds to house these pretrial defendants would be anywhere between $280 million and $983 million dollars, to construct the estimated 14,000 new jail beds that would be needed if surety bonding were not used.

Plaintiffs offer no satisfactory alternative to this proven method. Rather, the relief they seek – release of all defendants on the basis of indigence – would only compound the costs to the community of additional crime, and the cost of law enforcement having to re-arrest offenders. Plaintiffs offer no argument why possible alternatives to bail, including detaining everyone or detaining no one, would serve the public and the justice system. For example, a pretrial release services program proposed in Maryland in 2014 as an alternative to bail was estimated to cost $100 million to $200 million a year. (Daraius Irani, Raquel Frye and Zachary Jones, *Estimating the Cost of the Proposed Maryland Pretrial Release*

*Services Program*, Regional Economic Studies Institute, Towson University, at 10 (March 11, 2014), available at http://bit.ly/1ttuwFn.)

Commercial sureties strike a time-proven balance. The modern bail system gives a defendant incentives to reach out to network of friends and family to secure release and prepare for trial, and gives a bail bondsmen incentives to make sure a defendant appears in court. The system works well and should continue free of the current legal challenge.

## II.    JACKSONVILLE'S    MISDEMEANOR    BAIL    SCHEDULE    IS CONSTITUTIONAL[5]

### A.    U.S. Courts Uniformly Hold That There is No Indigence Exception to Bail

The Eighth Amendment mandates that "excessive bail shall not be required." U.S. Const. amend. VIII. And the Florida Constitution requires that every defendant "shall be entitled to pretrial release *on reasonable conditions*." Fla. Const. art. I § 14. These authorities confirm that bail is in fact lawful. To make the point even clearer: The Constitution does not say that all defendants are entitled to bail. "Indeed, the very language of the Amendment fails to say all arrests must be bailable." *Carlson v. Landon*, 342 U.S. 524, 545–46 (1952).

Nor does the Constitution say that defendants are entitled to bail they can afford. "[B]ail is not excessive merely because the defendant may be financially unable to post an amount otherwise meeting the above standards." *United States v. Van Caester*, 319 F. Supp.

---

[5] By adopting and incorporating all applicable argument from Defendants' motions to dismiss filed and served on October 27, 2017, *amici curiae* note in particular that the *Younger* abstention arguments raised by both Defendants make clear that the relief sought by the Complaint would upset the comity between state and federal governments, and frustrate the "sensitivity to the legitimate interests of both State and National Governments." *Younger v. Harris*, 401 U.S. 37, 44 (1971).

1297, 1298 (S.D. Fla. 1970); *see also United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement.").

A defendant's financial inability to make bail "is certainly a consideration and a concern which must be taken into account when determining the appropriate amount of bail, *but it is neither the only nor controlling factor to be considered by the trial court judge in setting bail.*" *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1134 (7th Cir. 1984). Similarly, in 1987 the U.S. Supreme Court, in *United States v. Salerno*, 481 U.S. 739, 755 (1987), affirmed the facial constitutionality of the federal Bail Reform Act 18 U.S.C. § 3142 against challenges brought under the Eighth Amendment and the Due Process Clause.

Indeed, controlling Eleventh Circuit law holds that bail that "is necessary to provide reasonable assurance of the accused's presence at trial is constitutionally permissible." *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978).[6] While noting that excessive bail would run afoul of the Eighth Amendment and due process, "[t]he ultimate inquiry in each instance is what is necessary to reasonably assure defendant's presence at trial." *Id.*

In *Rainwater*, the former Fifth Circuit, sitting *en banc*, rejected a constitutional challenge to Florida's bail system at the time that claimed that "in the case of indigents, equal protection standards require a presumption against money bail and favoring the other enumerated forms of release." *Id.* at 1056. Noting that a panel of the court earlier had found

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

that the Constitution required such a presumption, the *en banc* court replied, "We disagree." *Id.* This Court need go no further to reject the Plaintiff's claims.

The *Rainwater* court did not stop there, however. It noted that "[u]tilization of a master bond schedule provides *speedy and convenient release* for those who have no difficulty in meetings [sic] its requirements." *Id.* at 1057. *Rainwater* defined a bail schedule as listing "the amount of a bond specified for each listed offense. It contemplates that each accused's pretrial money bail is to be set automatically on the basis of the offense charged." *Id.* n.6.

That description aptly describes the bail schedules at issues here, attached to the Complaint as Exhibit 1. The schedules note, for example, "Assault on Law Enforcement Officer/Firefighter . . . $2,508.00/Disorderly Intoxication (Public Disturbance) . . . $1,508.00/Indecent Exposure . . .$1,008.00." (Compl. Ex. 1 at 3–5.) These granular distinctions and specific numbers show that the bail schedules clearly pass rational basis review, such that the indigence exception for misdemeanor defendants requested by the Plaintiffs must be denied.[7]

While the Plaintiffs suggest that there is constitutional injury in having to wait 24 hours to see a judge, a defendant arrested without a warrant is entitled by the Fourth Amendment to have a probable cause hearing before a judge only within *48* hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 58–59 (1991). But there is no corresponding time

---

[7] The Supreme Court mandates rational basis review for classifications that bear on economic status. *San Antonio Indep. School Dist. v. Rodriguez*, 411 US. 1, 23–24, 53 n.109 (1973) (noting that "where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages").

requirement for the setting of bail. "There is no right to post bail within 24 hours of arrest."

*Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004).

The clarity of these rulings demonstrates that, if any change in the bail system should happen, it must come from the Legislature or the municipal government, not from this (or any other) Court. Notably, Plaintiffs do not attack the facial validity of the bail schedules because they cannot. But, this strategy leads them to additional fatal flaws, discussed in the next section, when their as-applied argument becomes mired in individualized issues.

**B.** **The Predominance of Individualized Issues Means the Plaintiffs' Claims are Not Suitable for Class Treatment**

Decisions on bail involve many individualized, particular facts about the background of each defendant, the details of the offense alleged, and the requirements of the legal system and the community at large. These data are synthesized and a decision is provided by a judicial officer authorized by Florida statute and rule to set bail for defendants. Not only would the Plaintiffs' requested relief trample the judgment, discretion, and experience of Florida state judges, it also would ignore the manifold individual features of each bail decision. For these reasons, the Plaintiffs' claims are not suited for class treatment.

As the Complaint alleges, each of the three named Plaintiffs (a) received an individualized inquiry from a judge, (b) who *increased* the bond, and (c) appointed a public defender – likely because of particularized factors relating to either a record of failing to appear, a risk of flight, or signs of danger to the community. (Compl. ¶¶ 18–20). Taken as true, these allegations demonstrate that these claims are unsuitable for class treatment, and that the named class representatives cannot represent a class.

4826-8892-2195.3

These individualized factors reveal the flaw in Plaintiffs' proposed class definition, which reads as follows: "All misdemeanor arrestees who are or will be detained in the custody of JSO for any amount of time after arrest *because they are unable to pay money bail*." (Compl. ¶ 60.) It is clear that, in this case, Plaintiffs and proposed class members were detained *because of* other considerations, including but not limited to their alleged offenses, past records, and risk of non-appearance. Therefore it is not clear that their claims are typical of the class's claims sufficient to pass muster under Federal Rule of Civil Procedure 23(a)(3). *See, e.g.*, *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class.")

These individualized factors also doom the Plaintiffs' bid to satisfy Rule 23(a)(2)'s commonality requirement. In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original), the Supreme Court clarified that "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Without "some glue holding the alleged reasons for all those decisions together," the class action will never generate the common answer to each class member's ultimate question of "*why was I disfavored*." *Id.* at 352 (emphasis in original). The overwhelming predominance of individualized factors affecting the bail for each detained person precludes class certification.

## CONCLUSION

This Court should dismiss the Complaint.

4826-8892-2195.3

/s/ Lawrence J. Dougherty
Adam R. Alaee (FBN 0819611)
Primary email: aalaee@foley.com
Secondary email: crowell@foley.com
Lawrence J. Dougherty (FBN 68637)
Primary email: ldougherty@foley.com
Secondary email: rmeadows@foley.com
FOLEY & LARDNER, LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 299-2300
Facsimile: (813) 221-4210
Attorneys for *amici curiae* Roche Surety and
Casualty Company, Inc.,
and Roche Surety, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system, which will provide a true and correct

copy of the foregoing to all counsel of record.

/s/ Lawrence J. Dougherty
Attorney

4826-8892-2195.3