UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH MENTER,
JONATHAN DANIELS,
JAMES DAVIS,
on behalf of themselves and all others
similarly situated,

Case No.: 3:17-cv-1029-J-39JBT

**PLAINTIFFS**

vs.

**JUDGE MARK H. MAHON,**
in his official capacity, as Chief Judge
of the Fourth Judicial Circuit of Florida,
on behalf of himself and all other Fourth
Circuit Judges and County Judges sitting
in Duval County, Florida,
**SHERIFF MIKE WILLIAMS,**
in his official capacity,
as Sheriff of the City of Jacksonville,

**DEFENDANTS**

## PLAINTIFFS' RESPONSE TO SHERIFF WILLIAMS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, by and through undersigned counsel, hereby file this response to Sheriff Williams' Motion to Dismiss and Incorporated Memorandum of Law (Doc. 13) and state:

## I. INTRODUCTION

Plaintiffs have filed a Complaint (Doc.1) requesting this Court to apply established due process and equal protection precedent and hold that the City of Jacksonville's bail practices are unconstitutional. Plaintiffs allege that the City has a policy of conditioning release from jail on amounts of money that poor individuals cannot pay, which imposes a *de facto* order of pre-trial detention. Denying liberty in this way to those who are presumed innocent, is permissible only if

the government (1) shows that non-financial conditions could not serve its purposes, and (2) provides procedures adequate to protect against the enormous deprivation of arrestees' liberty.

Sheriff Williams moves to dismiss and requests the court to abstain in this case under the *Pullman* and *Younger* abstention doctrines. He contends that this Court should not reach the federal constitutional question and that the declaratory and injunctive relief that Plaintiffs request would inappropriately interfere with the state-court process of fixing bail.

Sheriff Williams further contends that Plaintiffs fail to state a claim arguing that the Sheriff's Office does not fix bail. Therefore, Sheriff Williams asserts Plaintiffs have not alleged that a policy or custom established or permitted by Sheriff Williams was a moving force behind the alleged constitutional injury. He further urges dismissal of the §1983 action, over the state-law constitutional claim in Count II. Plaintiffs hereby respond and further notify the Court and the parties that the Plaintiffs intend to dismiss Count II of the Complaint.

## II.     The Court Should Not Abstain Under Pullman or Younger

### A. *Pullman* Abstention

The *Pullman* abstention doctrine simply does not apply here. As Sheriff Williams recognizes, *Pullman* abstention requires two elements to be present before a federal court exercises its discretion to abstain: "(1) an unsettled question of state law and (2) that the question be dispositive of the case and would avoid, or substantially modify, the constitutional question." *See* (Doc. 13 at 5)(citing *Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983)). Yet, it is clear neither element is present here. Moreover, the case relied upon by Sheriff Williams, *Duke, supra*, demonstrates why abstention is improper. Finally, the Sheriff's argument appears to be predicated on some alleged lack of clarity addressing Plaintiffs' state law claim in Count II, but

...

Plaintiffs agree Count II should be dismissed as set forth below. Accordingly, *Pullman* abstention does not apply.

Sheriff Williams does not argue that Florida law on bail (whether in the Florida Constitution, statutes, or rules of criminal procedure) is unsettled. In fact, it is not. Rather, the Florida Constitution, statutes, and rules of criminal procedure on bail are well-settled and clear, and Plaintiffs do not contend they are ambiguous or uncertain. *Pullman* abstention therefore does not apply because there is not an unsettled question of state (Florida) law. *Duke*, 713 F.2d at 1510 ("An uncertain question of state law is critical to the decision to abstain").[1] Indeed, in *Duke*, the Eleventh Circuit held that a district court should not have abstained from a constitutional challenge to an Alabama statute which called for the denial of a barber's license to a convicted felon because the language of the statute at issue was clear and not subject to construction. *Id.* at 1511. Because the statute was clear, there was no need for state law construction to avoid the federal constitutional question and *Pullman* abstention did not apply. *Id.* Such is the case here.

The main crux of Sheriff Williams's argument for *Pullman* abstention appears to be centered around Plaintiffs' claims in Count II, which assert that the Defendants actions also violate the Florida Constitution. (Doc. 1 at 21-22). In essence, the Sheriff claims that this Court should abstain from resolving Plaintiffs federal constitutional claims in Count I because a state court could properly resolve this case by addressing Plaintiffs' state constitutional claims in Count II. *See* (Doc. 13 at 6-7). However, as set forth below and in Plaintiffs' Response to Defendant Judge Mahon's Motion to Dismiss, Count II is due to be dismissed. As a result, this argument for abstention is not valid. Rather, this Court "must grapple with the…constitutional questions that confront it squarely." *Duke*, 713 F.2d at 1510. *See BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950,

---

[1] Of course, since there is no unsettled question to answer, element two of the *Pullman* abstention test is not met either.

3

954 (5th Cir. 1977)(finding *Pullman* abstention improper in case asserting a federal due process challenge to a Florida statute although "the Florida Constitution contains a provision equivalent to the due process clause of the fourteenth amendment to the United States Constitution").

Finally, even if Florida law on this subject was unclear, "*Pullman* abstention is not appropriate because the driving force behind the Plaintiffs' claims is a right guaranteed by the United States Constitution, and state court clarification of state law would not make a federal court ruling unnecessary." *Hydrick v. Hunter*, 500 F.3d 978, 987 n.6 (9th Cir. 2007), *overruled on other grounds, Hunter v. Hydrick*, 556 U.S. 1256 (2007).

### B. Younger Abstention Does Not Preclude Federal Court Jurisdiction

Defendant Williams argues that the Court should abstain under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). But *Younger* is entirely inapplicable because Plaintiffs have no adequate opportunity to raise their claims in their pending proceedings, and relief in this case would not interfere with those proceedings. *See ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 734 (S.D. Tex. 2016), *Walker v. City of Calhoun, Georgia*, 2017 WL 2794064, *3 (N.D. Ga. 2017) (appeal pending No. 17-13139 (11th Cir.)).

### 1.    Plaintiffs Do Not Have an Adequate Opportunity to Raise Their Fourteenth Amendment Claim in the State Proceedings.

The binding panel decision in *Pugh v. Rainwater*, 483 F.2d 778 (5th Cir. 1973), [2] disposes of Defendant's abstention arguments. *Rainwater* held that *Younger* abstention does not bar federal court adjudication of "procedural rights" if the plaintiff "seeks to challenge an aspect of the criminal justice system which adversely affects him but which *cannot* be vindicated in the state

---

[2] In *Bonner v. City of Prichard*, 661 F2 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

court trial." *Id.* at 782 (emphasis original). The Fifth Circuit has never "declined to adjudicate federal questions," the panel explained, "merely because resolution of these questions would affect state procedures for handling criminal cases." *Id.* at 781. Instead, "[w]here...the relief sought is not 'against any pending or future court proceedings as such,' *Younger* is inapplicable." *Id.* at 781-82 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3 (1971)). The *Rainwater* court distinguished between a state court defendant challenging the merits of his criminal prosecution in federal court –by, for example, attempting to suppress the evidence presented in state court based on an unconstitutional search and seizure—and a federal court challenge to "an aspect of the criminal justice system which adversely affects" him but which is unrelated to the merits of the prosecution itself. *Id.* at 892.

The Supreme Court endorsed the *Rainwater* holding in *Gerstein v. Pugh*, 420 U.S. 103 (1975), when it unequivocally concluded that the "District Court correctly held" that a federal court could impose an injunction against a state court if the injunction is "not directed at the state prosecutions" and instead enjoins a practice "that could not be raised in defense of the criminal prosecution: such as "the legality of pretrial detention without a judicial hearing." 420 U.S. at 108 n.9.

Courts have since relied on *Gerstein* to hold that *Younger* in applicable to injunctions that do not imperil the merits of a criminal prosecution or the admission of evidence at trial. In *Fernandez v. Trias Monge*, 586 F.2d 848 (1st Cir. 1978), for instance, the First Circuit relied on *Gerstein* to hold that *Younger* abstention did not bar a federal court injunction requiring an adversary probable cause hearing before a juvenile is placed in pretrial detention. 586 F.2d at 851-52. The court distinguished the plaintiff's challenge to his pretrial detention without a hearing— which could not be raised as a defense to the prosecution—from the "paradigm situation calling

for *Younger* restraint," namely a challenge to the statute in which the defendant is simultaneously being prosecuted or the procedures for the admission of evidence at trial. *Id.* at 851.

*Younger* abstention is inapplicable because Plaintiffs can not litigate their claim that the bail practices complained of her violate the Fourteenth Amendment in their trials and that, even if they could, injunctive relief would not imperil their underlying criminal prosecutions. *ODonnell*, 227 F. Supp. 3d at 734-37; *see also ODonnell*, 2017 WL 1735456 at *81 n.119. To paraphrase *Rainwater*, "[i]f these plaintiffs were barred by *Younger* from this forum, what relief might they obtain in their state court trials? Since their pre-trial incarceration would have ended as of the time of trail, no remedy would exist. Their claims to pre-trial preliminary hearings would be mooted by conviction or exoneration." *Pugh*, 483 F.2d at 782. [3]

2. **The Supreme Court's *Younger* Analysis in *O'Shea* Does Not Require Abstention in This Case.**

Defendant Williams argues that *O'Shea v. Littleton*, 414 U.S. 488 (1974), bars all federal court challenges to state court pretrial practices because any federal court relief would impermissibly interfere with state criminal prosecutions. Defendant reads *O'Shea* too broadly, as his position would foreclose the relief that the Court provided in *Gerstein*—a case decided one year after *O'Shea*.[4]

---

[3] Over the last two years, federal district courts across the country have also found that *Younger* abstention is unwarranted in nearly identical cases because the plaintiffs were not challenging the merits of their prosecution and could not raise their constitutional claims as a defense at trial or on appeal. *See, e.g. Walker v. City of Calhoun*, No. 4:15-cv-0170-HLM, 2017 WL 2794064, at *3 (N.D. Ga. June 16, 2017) (abstention inappropriate because plaintiffs "would not have an adequate opportunity to raise their constitutional challenges" in the criminal proceedings); *Welchen v. Cty. Of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, *8 (E.D. Cal. Oct. 11, 2016) (abstention inappropriate because plaintiff's claims are "not a defense to the crimes which plaintiff is charged with," and do not "have any connection to those criminal charges").

[4] The Court's *Younger* analysis in *O'Shea* is arguably obiter dictum and thus not binding—as the Court decided the case on standing grounds. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 385-86 (5th Cir. 1998) ("That which is 'obiter dictum' is stated only 'by the way' to

In *O'Shea*, the Court held that *Younger* abstention was warranted because the plaintiffs sought oversight over nearly every aspect of the local criminal justice system, including law enforcement, bail, trial, and sentencing practices. The plaintiffs alleged that law enforcement and judicial officers in Cairo, Illinois made enforcement decisions based on racial animus and to discourage black residents from agitating for economic and political change. The Court correctly reasoned that federal court intervention against officials would be "unworkable" because it would require an "ongoing federal audit" of the entire criminal justice system, including by requiring state court judges to defend "their motivations" in adjudicating individual cases. *O'Shea*, 414 U.S. at 493 n.1, 500, 510.

In *Gerstein*, however, the district court's injunction *did not* require ongoing review of state court judges' factual or legal decisions. Instead, the injunction simply added an additional procedural safeguard to protect criminal defendants' constitutional rights. The Court therefore reinforced the court's analysis in *Pugh v. Rainwater* that *Younger* abstention is not required even if the injunction would "affect state procedures for handling criminal cases," so long as the injunctive relief would not "prejudice" the state court's "trial on the merits."
*Gerstein*, 420 U.S. at 108 n.9; *Rainwater*, 483 F.2d at 779.

*Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981), does not support abstention either. The decision instead reflects that *Gerstein* and *O'Shea* can be reconciled. In *Tarter*, the plaintiff sought in federal court to enjoin state court judges from, *inter alia*, imposing excessive bail and from refusing to docket and hear *pro se* motions. 646 F. 2d at 1011. The court held that *Younger* abstention did not prevent a federal court from requiring all *pro se* motions to be docketed and

the holding of a case and does not constitute an essential or integral part of the legal reasoning behind a decision.") (internal quotations omitted).

heard because such an injunction would not require "case-by-case evaluations of discretionary decisions" and would instead "add a simple, nondiscretionary procedural safeguard to the criminal justice system." *Id.* at 1013. An injunction against "excessive bail," however, would violate principles of comity because it would require "a federal court to reevaluate de novo each challenged bail decision." *Id.*

Here, Plaintiffs do not seek an injunction requiring a federal court to review individual money bail decisions, and they have not raised an Eighth Amendment claim based on excessive bail. Instead, Plaintiffs challenge the legality of their detention without an individualized inquiry into their ability to pay. As in *Tarter*, *Younger* abstention is unnecessary because an injunction would not endanger individual bail decisions, but would instead, "add a simple, nondiscretionary" requirement that courts assess an arrestee's ability to pay before imposing secured money bail. *Id.*

Nor would the relief that Plaintiffs request interfere with any state court criminal prosecution or interpose the federal court's judgment for the state court's evaluation of the merits of the criminal trial. *See Conover v. Montemuro*, 477 F.2d 1073, 1082 (3d Cir. 1972) (challenge to intake proceedings did not warrant *Younger* abstention when relief requested would not substitute federal for state court fact-finding or hinder the state court's adjudicatory process).

Senior Federal District Judge Harold L. Murphy of the Northern District of Georgia stated in denying a similar *Younger* motion in a factually identical case:

> The Court also rejects Defendant's contention that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), applies here. When determining whether *Younger* abstention applies, courts ask: (1) whether the case will interfere with "an ongoing state judicial proceeding"; (2) whether "the proceedings implicate important state interests"; and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). As an initial matter, Plaintiff and the other similarly-situated individuals are not challenging the merits of their prosecutions, but rather, are challenging the legality of their pre-trial

8

detention—an issue that cannot be raised in the criminal prosecutions. *See Gerstein*, 420 U.S. at 108 n.9 (concluding that *Younger* absention did not apply where the request for an "injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution"); *Odonnell*, 2016 WL 7337549, at *19 ("The plaintiffs challenge the legality of detaining misdemeanor arrestees who are otherwise eligible for release pending trial or guilty plea without timely judicial consideration of the inability to pay a bail bond. Resolving this issue does not affect the merits of subsequent criminal prosecutions. The inability to pay bail cannot be raised as a defense in a subsequent criminal prosecution."). Plaintiff and the other similarly-situated individuals would not have an adequate opportunity to raise their constitutional challenges before the Municipal Court and *Younger* abstention consequently does not apply. *See Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. Dec. 17, 2015) ("The harm alleged-that probationers do not receive inquiries into indigency as required by the Fourteenth Amendment-has been inflicted before a probationer could voice any constitutional concerns. This alleged constitutional infirmity could be remedied without affecting the underlying state court judgements. Accordingly, *Younger* abstention is inappropriate."). The Court therefore rejects this argument.

*Walker v. City of Calhoun, Georgia*, 2017 WL 2794064, *3.

This court should follow the foregoing and deny Sheriff Williams' Motion to Dismiss.

### C. Count I States a Valid 1983 Claim.

Sheriff Williams contends that JSO is not a proper party under § 1983, because neither the Sheriff nor his agents fix the monetary amount of an arrestee's bail. (Doc. 13 at 17). Rather, the Sheriff and his agents merely follow policy set by state judges. *Id.* Plaintiffs do not dispute that the Sheriff is not the entity responsible for fixing the amount of bail in Duval County or promulgating the misdemeanor bail schedule. However, relief against the Sheriff in his official capacity is appropriate in this case because the Sheriff is complicit with and knowingly enforces the unconstitutional bail policies set by the Defendant Judges.

State and local law charge the Sheriff with implementing the unconstitutional bail policies at issue in this lawsuit. Specifically, Florida law states a county may, by ordinance, designate the

sheriff as the chief correctional officer of the county correctional system. § 951.061 Fla. Stat. (1) (2017). If so designated, the sheriff or his designee is charged with enforcing all existing state law concerning the maintenance and operation of county jails. *Id.* at § 951.061(2). The Jacksonville City Charter, in turn, states that the Sheriff "shall administer the prison farm and jails, and shall be responsible for service of civil process." Jacksonville City Charter Art. 8, § 8.02.

State law further charges the Sheriff and his agents with executing "all process of the Supreme Court, circuit courts, county courts" in their respective counties and requires them to "attend all sessions of the circuit court and county court held in their counties." § 30.15(1)(a), (c) Fla. Stat (2017). Furthermore, Florida law states that "in criminal actions instituted or pending in any state court, bonds given by defendants before trial until appeal shall be approved by a committing trial court judge or the sheriff." *Id.* at §. 903.34.

However, a municipality cannot be held liable under 42 U.S.C § 1983 unless the unconstitutional conduct at issued occurred because of the implementation or execution of a government policy or custom.[5] *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v.*

---

[5] Sheriff Williams contends that he acts on behalf of the county rather than as "an arm of the state" when he enforces the bail policies at issue. *See Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (*en banc*)). Ordinarily, a party acting as an arm of the state is entitled to sovereign immunity for damages claims under § 1983. *Id.* Even though Sheriff Williams does not claim such immunity, it would likely not bar Plaintiffs' claims for injunctive relief here. *See O'Donnell v. Harris County Texas*, 227 F. Supp. 3d 706, 751–52 (N.D. Tex. 2016) (explaining that claim against sheriff could proceed for prospective relief against Sheriff as a state law enforcement officer even if the complaint did not allege that the sheriff knew the orders he enforced were invalid).

*Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). The Sheriff argues, in essence, that Plaintiffs cannot satisfy *Monell*, since the wealth based detention system enforced by the Sheriff originated with the judges, rather than Duval County itself.

*Monell* was decided because Congress doubted its power to hold municipalities liable solely for the acts of its agents or employees, which would create a federal law of *respondeat superior* in § 1983 cases. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("The 'official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") The *Monell* requirement was not meant to foreclose relief in the situation alleged here, where the Sheriff and its agents engage in a widespread unconstitutional practice of detaining individuals in acquiescence to an unconstitutional state mandate

Indeed, several other courts have found municipal liability where unconstitutional widespread customs and practices were mandated by state law. *See Anela v. City of Wildwood*, 790 F.2d 1064, 1066–67 (3d Cir. 1986); *Davis v. City of Camden*, 657 F. Supp. 396, 399 (D. N.J. 1987). In *Anela*, the plaintiffs sued a municipality under § 1983 challenging the constitutionality of their detentions pursuant to a bail schedule that violated New Jersey rules of criminal procedure. *Anela*, 790 F.2d at 1065–66. The court first noted that the requirements of *Monell* were satisfied because the city routinely followed the repugnant bail schedule, which, at the very least, amounted to practice that was so well settled in the city that it took on the force of law. *Id.* at 1067.

However, the city argued that the procedure under which it routinely detained individuals could not be considered a "municipal" policy because the bail schedule was promulgated by a municipal court that was a part of the state judiciary and not within the city's control. *Id.* The court

disagreed, finding that the issuance of the bail schedule did not excuse non-compliance with the law. *Id.* It noted that private citizens are presumed to know the law and that "no less should be expected from public officials when they detain and confine persons." *Id.*

Similarly, in *Davis*, the plaintiff sued a municipality for the use of an unconstitutional strip search policy in its jails. 657 F. Supp. at 402. The municipality conceded that it routinely engaged such strip searches, but argued that the practice could not be a "county policy" because it was mandated by a state regulation. *Id.* The court rejected this argument and held that the fact that a state law mandates that a municipality implement a particular policy does not render the municipality's affirmative adoption of that policy any less of a municipal policy than when state law merely authorizes the policy or is silent on the issue. *Id.* at 404. It noted that denying victims of unconstitutional state action relief in such instances would be palpably inconsistent with the purpose of § 1983. Furthermore, it noted that municipal officials cannot blindly implement state laws, but are required to independently assess the constitutionality of its actions. *Id.* at 404.

Here, as in those cases, the Sheriff has affirmatively adopted a widespread practice implementing the wealth based detention system established by the judges. As the administrator of the Duval County Jail and an individual empowered by state law to approve bond, the Sheriff regularly detains individuals who cannot afford bond set by the bond schedule and Judges' individual bond determinations. (Doc. 1 at ¶¶ 52-56). Further, the Sheriff implements these policies knowing that bonds are set by the schedule and Judges without regard for the detainees' ability to pay. (Doc. 1 at ¶¶ 46-47). The Sheriff and his agents are charged with knowing and following the law, and the fact that orders from a state official may purport to limit their discretion does not change the fact that they regularly detain individuals in violation of their constitutional rights.

The Eleventh Circuit cases cited by the Sheriff do not demand a different conclusion, or even address the "no discretion" defense their motion raises. Those cases involved situations where plaintiffs sought to hold municipalities liable for constitutional violations committed by the sheriff where the sheriff acted as an arm of the state, and therefore outside of the municipality's auspices. *See, e.g., Turquitt v. Jefferson Cty, Ala.*, 137 F.3d 1285 (11th Cir. 1998) (*en banc*) (refusing to hold county liable for inadequate supervision of inmates by sheriff, where sheriff was found to be acting as an arm of the state when he supervised county jail); *Powell v. Barrett*, 496 F.3d 1288 (11th Cir. 2007) *vacated on other grounds by* 541 F.3d 1298 (11th Cir. 2008) (holding county could not be held liable for violations that occurred at county jail, because sheriff acted as an arm of the state when engaging in correctional duties); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) (holding county could not be liable for county judge's order that was rendered when acting as arm of the state). Here, however, the Plaintiffs are not attempting to hold the county liable for the actions of a state employee, but are suing the Sheriff directly for unconstitutional detentions that he and his agents have directly carried out.[6] None of these cases dealt with municipal actors who routinely carried out unlawful detentions and attempted to justify their actions using a state law mandate.

It is also important to note that Plaintiffs are not seeking damages from the Sheriff, but merely to enjoin him and his agents from future constitutional violations. Federal courts have long been empowered to enjoin constitutional violations by government actors. *See Idaho v. Coeur*

---

[6] The other cases on which the Sheriff relies also follow a similar pattern where plaintiffs attempted to hold municipalities liable for the acts or omissions of state employees. In *Pompey v. Broward County*, 95 F.3d 1543, 1552 (11th Cir. 1996) the court found that county officials were not liable for somehow discouraging parties to contempt hearings to seek court-appointed counsel, since the appointment of counsel was a state court function. In *Collins v. Homestead Corr. Inst.*, 452 Fed. Appx. 848, 851 (11th Cir. 2011), the court found that the county did not satisfy the subjective prong Eighth Amendment by following evacuation procedures devised at the state level. *Id.* at 851. More importantly, these cases did not address whether municipalities or their agents were proper parties in a lawsuit to enjoin unconstitutional conduct, but instead rested on whether those officials had actually committed constitutional violations at all.

13

*D'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) ("an allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient" to seek relief); *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) (the ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

The Sheriff's argument that it was merely following the orders of local judges does nothing to undermine this Court's power to grant injunctive or declaratory relief against him. Courts routinely enjoin officials from enforcing unconstitutional state laws, that leave those officers no discretion. *See, e.g., Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) (finding Washington Clerk of Court was proper party in action challenging Florida's same-sex marriage ban that criminalized issuing marriage licenses to same-sex couples). Indeed, Florida law requires the Sheriff to be named as a party in state habeas proceedings to reduce or modify individualized conditions of bail set by state court judges, over which the sheriff has no control. *See. T.O. v. Alachua Resionci Detention Center*, 668 So.2d 243, 244 (Fla. 1st DCA 1996); *See also State v. Carson*, 189 So.2d 376 (Fla. 1st DCA 1996). Therefore, notwithstanding the Sheriff's complicity in the county's wealth based detention system, this Court may still enjoin him from enforcing unconstitutional state laws. For these reasons, the Sheriff is a proper party to this lawsuit even if the unconstitutional, wealth-based detention system originated from the Judges.

### D. Count II Is Due to Be Dismissed. Plaintiffs Have Filed a Motion to Dismiss Count II.

Upon consideration of the Defendants' arguments, Plaintiffs concede that this Court lacks jurisdiction over Count II of Plaintiff's Complaint. *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Plaintiffs are aware that it is generally improper to request relief from the Court, such as dismissal of a claim, without a written motion. *See* Fed. R. Civ. P. 7(b)(1); Local

Rule 3.01(f). However, the proper procedure for withdrawing a single claim from a lawsuit appears to require amending the Complaint pursuant to Rule 15(a). *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004) ("A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a).") (quoting 8 *Moore's Federal Practice* § 41.21[2] at 41–32.).

Since such amendment would require resubmission of Defendants' Motions to Dismiss and Plaintiffs' responses, Plaintiffs instead concede that Count II is due to be dismissed without formally requesting the court to do so. *See* Fed. R. Civ. P. 1 (noting that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). However, Plaintiffs are amenable to disposition of Count II through whichever procedural mechanism this Court recommends.

### III. Conclusion

For the reasons stated above, the Plaintiffs' claims against Sheriff Williams are not barred by abstention doctrines nor excused by the orders of the defendant Judges. Therefore, Sheriff Williams' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Wm. J. Sheppard

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:   (904) 356-9661
Facsimile:   (904) 356-9667
Email:        sheplaw@att.net
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of December, 2017, a true copy of the foregoing was served upon the following by Electronic Mail to:

Jacob Payne, Esq.
Office of the General Counsel
117 W. Duval St., Suite 480
Jacksonville, FL  32202
jpayne@coj.net

William Stafford, Esq.
Office of the Attorney General
PL-01-The Capitol
400 S. Monroe Street
Tallahassee, FL  32399
Williams.stafford@myfloridalegal.com

16

John Phillips, Esq.<br>
Office of General Counsel<br>
117 w. Duval St., Suite 480<br>
Jacksonville, FL  32202<br>
jphillips@coj.net

_____
ATTORNEY