# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA JACKSONVILLE DIVISION

JOSEPH MENTER, et al.,

    Plaintiffs,

v.                                                        CASE NO. 3:17-cv-1029-J-39JBT

JUDGE MARK MAHON, et al.,

    Defendants.

_____/

## DEFENDANT MAHON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Judge Mark Mahon, sued in "in his official capacity, as Chief Judge of the Fourth Judicial Circuit of Florida, on behalf of himself and all other Fourth Circuit Judges and County Judges sitting in Duval County, Florida, pursuant to this Court's granting leave to file, DE 30, hereby files the following reply memorandum in support of his motion to dismiss, DE 14.

**I. Judge Mahon and the putative defendant class are entitled to judicial immunity.**

In response to Judge Mahon's judicial immunity argument, Plaintiffs first argue statutory construction, and provide a small excerpt of the U.S. Senate Judiciary report in support of the Federal Courts Improvement Act, Pub. L. No. 104-317, 110

Stat. 3847, and claim that the amendments to 42 U.S.C. §§ 1983 and 1988 set forth in that act were intended to carve out a limited exception for judges only where lawsuits were "frivolous" or "burdensome." DE 24 at 4. Plaintiffs' argument is unavailing because there is no cause for resort to legislative history, and because the cited committee report does not say what Plaintiffs imply that it does.

It is a fundamental principal of statutory construction that where the meaning of a statute is clear, the only rule of construction permitted is the plain meaning of the statute itself. "It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004) (citation and quotation omitted); *In re Bayou Shores SNF, LLC,* 828 F.3d 1297, 1313 (11th Cir. 2016).

The amendments to §§ 1983 and 1988 apply to *"any action* brought against a judicial officer for an act or omission taken in such officer's judicial capacity." 42 U.S.C. §§ 1983, 1988 (emphasis added). There is no express limitation to frivolous or burdensome lawsuits, as Plaintiffs suggest. There is certainly no ambiguity to this language. "Any action" means any action, plain and simple. Plaintiffs do not explain how this language is in any way susceptible to an interpretation whereby "any action" would mean "only frivolous lawsuits or burdensome litigation. There

2

is simply no reason to proceed beyond the plain language of these statutes in order to interpret and apply them.

Even if the Court were to consider the committee report cited by Plaintiffs, it would find that it does not have the meaning that Plaintiffs attempt to impart to it. The very first sentence of section of the report dealing with these amendment states that "[t]his section restores the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam v. Allen,* 466 U.S. 522 (1984), and has the support of the American Judges Association, the Conference of Chief Judges of the National Center for State Courts, and the American Bar Association." S. Rep 104-366 § 311. Plaintiffs quoted language was taken from the final sentence of the section which reads in full: "Section 311 restores the full scope of judicial immunity lost in Pulliam and will go far in eliminating frivolous and harassing lawsuits which threaten the independence and objective decision-making essential to the judicial process." There is simply nothing in this report which would indicate any intent to limit the effect of the amendments to lawsuits that would meet some undefined standard of frivolousness or harassment.

In support of their arguments, Plaintiffs cite to *Strawser v. Strange,* 105 F.Supp. 3d 1323 (S.D. Ala. 2015) (*Strawser 1)*.[1] While the cited decision granted a

---

[1] This is the only case cited by Plaintiffs on this issue that post-dates the 1996 amendments to §§ 1983 and 1988.

preliminary injunction against enforcement of Alabama's same sex marriage act, and applied to judicial defendants, judicial immunity under § 1983 was not an issue in that order. It was, however, at issue earlier in that case in the motion to dismiss filed by two defendant judges. *Strawser v. Strange,* No. 14-0424-CG-C (S.D. Ala. Apr. 23, 2015) (*Strawser 2*).[2] While the judges argued judicial immunity under § 1983, the court found that they were not entitled to immunity, not as Plaintiffs suggest, because judicial immunity was not a barrier to preliminary injunctive relief, but because the act in question was not a judicial act. *Id.* at 5-6. Contrary to Plaintiffs' argument therefore, the court in *Strawser* found that § 1983 (and presumably § 1988) was in fact applicable to the case, but also found that the exception to judicial immunity provided in the statutes also applied and precluded a finding of immunity.

The pertinent act at issue in *Strawser* was the issuance of marriage licenses by the probate court. *See Strawser 1,* 105 F.Supp. at 1330. In *Strawser 2,* the court found that the issuance of marriage licenses was a ministerial act. *Strawser 2,* No. 14-0424-CG-C at 6. As such, the judges were not protected by the judicial immunity afforded by § 1983 because that immunity expressly extended only to acts or omissions taken their judicial, as opposed to ministerial, capacities. *Id.*

---

[2] A copy of the order denying the judges' motion to dismiss is attached hereto as **Exhibit 1.** The Court is requested to take judicial notice of the order pursuant to Fed. R. Evid. 201(c)(2).

In the instant case, the acts of Judge Mahon, and the other Fourth Circuit judges, are the determination of whether to set a secured bond for misdemeanor defendants, and if so, the amount of such bonds. Unlike marriage licenses, judges have extensive discretion in making these determinations, which are to be made based on an individual consideration of each defendant's case pursuant to statute and procedural rules. Such determinations certainly qualify as judicial acts, and are entitled to the protection of the exceptions set forth in §§ 1983 and 1988.

**II. The Younger abstention doctrine applies in this case.**

In response to Judge Mahon's *Younger* arguments, Plaintiffs assert that this case is controlled by *Pugh v. Rainwater,* 483 F.2d 778 (5th Cir. 1973), *aff'd in part and reversed in part by Gerstein v. Pugh,* 420 U.S. 103 (1975). In *Rainwater,* the plaintiffs challenged Dade County's practice of holding criminal defendants based on the filing of an information by the state attorney without providing defendants with preliminary hearings to determine probable cause. *Id.* at 780. The *Rainwater* court determined that *Younger* abstention did not apply because: 1) relief was not sought "against any pending or future criminal proceedings *as such;"* and 2) plaintiffs sought to "challenge an aspect of the criminal justice system that adversely affects [them] but which *cannot* be vindicated in the state court trial." *Id.* at 781-82 (emphasis in original).

*Rainwater* is distinguishable and does not control the abstention question in the instant case. First, the practice or procedure at issue in *Rainwater* was the lack of a requirement for a preliminary hearing. Here, the challenge is to the procedures for pretrial release and bond. Unlike a preliminary hearing in *Rainwater,* Plaintiffs have a statutory and procedural right to pretrial release, as long as the court can fashion conditions that ensure their appearance at trial as well as the safety of the community. § 907.041(1), Fla. Stat; Fla. R. Crim P. 3.131(a). This means that Plaintiffs, and any other misdemeanor arrestees in general, have their release conditions set at their initial appearance. Fla. R. Crim P. 3.131(b). An arrestee who is unhappy with the conditions set by the court may move for a change in those conditions, including a reduction of bond amount or removal of the requirement for a secured bond. Fla. R. Crim P. 3.131(a). In fact, Plaintiff Davis did just that, and was granted a release on his own recognizance. *See* DE 14-1 (Declaration of Rose Devoe) at 1, Exhibit 1. In addition, criminal defendants in Florida have the right to seek pretrial habeas corpus relief in Florida appellate courts. *See Norton-Nugin v. State,* 179 So. 3d 557, 559 (Fla. 2d DCA 2015) ("[a] petition for writ of habeas corpus is the proper method to seek review of an order setting pretrial release conditions").

Secondly, the relief sought by Plaintiffs would clearly interfere with current and future State criminal proceedings. The relief requested in *Rainwater* simply

required Florida courts to provide a preliminary hearing to criminal defendants in order to make a judicial determination of probable cause. It did not seek to prescribe what a court was to consider in making its probable cause decision. Here, in contrast, Florida courts already provide a judicial determination of release conditions at a criminal defendant's first appearance, and provide for subsequent review of those release conditions.

Plaintiffs instead seek to have this Court revise the State court pretrial release proceedings. The Plaintiffs demand the following injunctive relief:

> (1) "an order preliminarily enjoining the Defendants from imposing secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;" and
>
> (2) "an order and judgment "to preliminarily enjoin Defendants – whether acting on behalf of the State, the County, or some other government entity – from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into and making findings concerning a person's present ability to pay the sum."

DE 1 at 21. In light of the fact that Florida already provides, by statute and procedural rule, for a judicial determination of pretrial release conditions, including the amount of any secured bond,[3] Plaintiffs necessarily seek to have this Court oversee the State court's process in making this determination in all Duval County

---

[3] *See* §§ 903.03(1) and 903.035(2), Fla. Stat., and Fla. R. Crim. P. 3.130(d) and 3.131.

misdemeanor cases. This is precisely the concern for comity that underlies the *Younger* abstention doctrine.[4]

Plaintiffs argue that *Tarter v Hury,* 646 F.2d 1010, 1013 (5th Cir. 1981) provides guidance for distinguishing between claims that federal courts should abstain under *Younger* and those it must hear. DE 24 at 9. Judge Mahon agrees, but contends that the opposite conclusion should be drawn from that case. The court in *Tarter* held that *Younger* precluded consideration of the plaintiffs' claims that county judges imposed excessive bail, but did not bar review of claims that the county clerk refused to docket, and the court refused to hear, pro se motions. This distinction was made "[b]ecause the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case, the setting of bail requires ad hoc decisions committed to the discretion of judges;" accordingly "[a]n injunction against excessive bail, no matter how carefully limited, would require a federal court

---

[4] Plaintiffs cite two district court cases in support of their position. Both are readily distinguishable. *Walker v. City of Calhoun,* No. 4:15-cv-170, 2017 WL 2794064 (N.D. Ga. June 16, 2017), *on appeal*, No. 17-13139 (11th Cir. Jul. 13, 2017) ("Walker 2"). *Walker's* challenge is to the alleged practice of the city's police department to impose bail amounts without consideration of an arrestee's ability to pay. *Walker v. City of Calhoun,* No. 4:15-cv-170, 2016 WL 361612, *2-*3 (N.D. Ga. Jan. 28, 2016) ("Walker 1"). Similarly, *Welchen v. Cty. of Sacramento,* No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, *1-*2 (E.D. Cal. Oct. 10, 2016), involves a challenge to the county sheriff's department's enforcement of a bail policy which allegedly discriminates against those unable to post the scheduled bail amount. The instant case, in contrast, involves a challenge to the alleged polies and practices of State judges presiding over pending criminal cases in Duval County. Because injunction in *Walker* and *Welchen* would not directly impact ongoing criminal prosecutions, and because there is no ability to challenge these policies and practices in a criminal proceeding, *Younger* abstention arguably would not apply.

to reevaluate de novo each challenged bail decision." *Id.*  On the other hand, "an injunction requiring that all pro se motions be docketed and considered by the court (although not necessarily argued) would not require such case-by-case evaluations of discretionary decisions," because "[i]t would add a simple, nondiscretionary procedural safeguard to the criminal justice system in Galveston County." *Id.* at 1013-14.

Plaintiffs' claims in the instant case are clearly akin to those concerning excessive bail in *Tarter* because the pretrial release and bail determinations involve the exercise of discretion by Duval County judges, and are nothing like the simple, ministerial act of docketing motions, or the requirement that judges consider those motions without setting any enforceable standards for such consideration.  As the *Tarter* court stated, "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Id.* at 1013.  This "anticipatory interference" in the operation of State courts is prohibited by *Younger*. *Id.*

As set forth in Judge Mahon's Motion to Dismiss, consideration of the factors enunciated by the Supreme court in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432-34 (1982), clearly supports abstention by the Court in this matter.  Plaintiffs' response does not dictate a contrary result.

WHEREFORE, for the reasons set forth above, and in his Motion to Dismiss, Defendant Judge Mark Mahon respectfully requests that this Court enter an order dismissing the Complaint against him.

      Respectfully Submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

*/s/ William H. Stafford III*
William H. Stafford, III
Senior Assistant Attorney General
Fla. Bar No.: 70394
Office of the Attorney General
Civil Litigation
The Capitol - PL 01
Tallahassee, FL 32399-1050
Telephone:   (850) 414-3785
Facsimile:    (850) 488-4872
*Counsel for Defendant Mahon*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically with the court using CM/ECF on January 5, 2018, and thereby served on Bryan E. DeMaggio, Esq., Camille Elizabeth Sheppard, Esq., Elizabeth Louise White, Esq., Jesse B. Wilkison, Esq., Matthew R. Kachergus, Esq., and William J. Sheppard, Esq., Sheppard, White, Kachergus, & DeMaggio PA, 215 Washington Street, Jacksonville, Florida 32202, *counsel for Plaintiffs;* via email to sheplaw@att.net; and Jon R. Phillips, Esq. and Stephen J. Powell, Esq., Office of the General Counsel for the City of Jacksonville, Florida, 117 W Duval St Ste 480, Jacksonville, FL 32202-5721, *counsel for Defendant Williams,* via email to jphillips@coj.net and spowell@coj.net.

*/s/ William H. Stafford III*