# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JOSEPH MENTER, on behalf of
themselves and all others similar
situated, JONATHAN DANIELS, on
behalf of themselves and all others
similar situated, and JAMES DAVIS, on
behalf of themselves and all others
similar situated,

      Plaintiffs,

v.                                                 Case No. 3:17-cv-1029-J-39JBT

MARK H. MAHON, Judge, in his official
capacity, as Chief Judge of the Fourth
Judicial Circuit of Florida, on behalf of
himself and all other Fourth Circuit
Judges and County Judges sitting in
Duval County, Florida and MIKE
WILLIAMS, Sheriff, in his official
capacity, as Sheriff of the City of
Jacksonville,

      Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motions to Dismiss (Docs. 13 and 14), Plaintiffs' Responses in Opposition (Docs. 23 and 24) and Defendants' Replies (Docs. 33 and 34).

**I.    BACKGROUND**

Plaintiffs name as Defendants the Honorable Mark H. Mahon, Chief Judge of the Fourth Judicial Circuit for Florida and Sheriff Mike Williams. Plaintiffs intend for Judge Mahon to represent both himself and all other judges sitting in Duval County, Florida. Id. ¶ 9. Judge Mahon is responsible for the issuance of all administrative orders within

Florida's Fourth Judicial Circuit. Id. ¶ 4. One such order is a predetermined bail schedule that aligns a default bond amount with a given misdemeanor crime, its classification type, and its statutory basis. (Doc. 1.1 at 3; Bond Schedule). For example, the Bond Schedule classifies "Gambling" as a second degree misdemeanor and cites to its statutory basis at Florida Statutes Section 849.08 with a default bond amount of $1508.00. Id. at 4. The Bond Schedule is the exclusive means by which an arrested individual's bond is set unless the presiding judge alters the default amount. Id. ¶ 21. When a judge alters the bond amount, the judge does not inquire into a given arrestee's ability to pay. Id. Sherriff Williams's role is to effectuate the mandates of the Bond Schedule upon the arrest of an individual thought to be in violation of one of the enumerated crimes. Id. ¶ 5. If an arrestee can post a bond, the arrestee can be released soon after detention. Id. ¶ 7. If the individual cannot afford the default bond, then the individual is brought before a judge who determines probable cause for the arrest and an appropriate bond amount. Id. ¶ 6.[1]

Plaintiffs are three indigent individuals who were arrested for misdemeanor crimes who are unable to post bonds that would allow them pretrial release under the Bond Schedule. (Doc. 1 ¶¶ 18-20; Complaint).[2] Because they could not pay the default bond amounts, Plaintiffs were brought to J-1 within 24 hours of arrest where a judge

---

[1] This hearing occurs within 24 hours of arrest and is referred throughout the briefs as "J-1." Id. at 3.

[2] The facts presented are based on the allegations levied in the Complaint and assumed as true for purposes of resolving the instant motions to dismiss. See Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("[T]o survive ... a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations omitted).

determined probable cause and set new bond amounts.[3] Id. at 3. All of the Plaintiffs in this case received a higher bond amount than that provided for by the Bond Schedule. Id. at 5-6. Plaintiffs claim that Defendants violated the Fourteenth Amendment's equal protection and due process clauses by detaining them prior to trial while individuals with greater financial resources can post bond and enjoy pretrial release before even being brought to J-1. Id. at 20-21. Plaintiffs seek to represent themselves and others who are held in pretrial custody owing only to their inability to afford bond.[4] Id. at 12. In bringing this suit, they ask this Court to declare that the setting of bond without inquiry into an individual's ability to pay violates an arrestee's constitutional rights, and further, to enjoin Defendants from imposing "secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money." Id. at 21. Additionally, Plaintiffs seek an injunction that requires Defendants to make findings that "an arrestee has the present ability to pay" the amount of bond required. Id. Defendants responded to the Complaint with their Motions to Dismiss, which, among other things, argue that this Court should abstain from interfering with ongoing state criminal proceedings and that the Court lacks subject matter jurisdiction over this case because Defendants are no longer subject to pretrial detention. (Doc. 14 at 2).

---

[3] "Probable cause hearings are conducted two times a day, in the morning and in the afternoon, 365 days a year." Complaint ¶ 41.

[4] Following the Defendants' Motions to Dismiss, Plaintiffs conceded that Count II of the Complaint should be dismissed. (Doc. 23 at 14-15). Accordingly, the Court will only discuss Plaintiffs' claims under the Fourteenth Amendment as described in Count I.

## II. DISCUSSION

### A. Mootness

The Court first addresses Defendants' contention that this case is moot because this argument, if successful, would mean that this Court lacks subject matter jurisdiction to entertain Plaintiffs' arguments. Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001) (holding that the issue of "mootness is jurisdictional"). Even a case that was justiciable at the time of its filing may become moot and consequently be subject to dismissal. Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia, 868 F.3d 1248, 1255 (11th Cir. 2017), cert. denied sub nom. Davenport v. City of Sandy Springs, Ga., 138 S. Ct. 1326, 200 L. Ed. 2d 513 (2018). The parties agree that since this case was filed, Plaintiffs are no longer subject to pretrial detention owing to their inability to post bond. However, this case is an exception as it belongs to "that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." Gerstein v. Pugh, 420 U.S. 103, 111 n.11 (1975). In Gerstein, the Supreme Court recognized that "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." Id. As with Gerstein, Plaintiffs' pretrial detention for misdemeanor crimes was temporary and the nature of our advocacy system makes any appeal on their constitutional claims before being released difficult, if not impossible. Accordingly, the Court finds that this case fits the narrow exception carved out in Gertstein and that Plaintiffs' claims are not

moot because these asserted violations are "capable of repetition" and elude review.[5] Accord Id.

B.  Abstention

While Plaintiffs do not directly rely on the Eighth Amendment, it is a necessary component to the issues before the Court as it provides that excessive bail shall not be required. U.S. Const. amend. VIII. It was also once "one of the least litigated provisions in the Bill of Rights." Galen v. Cty. of Los Angeles, 477 F.3d 652, 659 (9th Cir. 2007). "The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754 (1987). For this determination the Court must compare "the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests." Galen, 477 F.3d at 660. That said, Plaintiffs rely on 42 U.S.C. Section 1983 and the Fourteenth Amendment's prohibition against depriving a person of liberty without due process of law and denying "to any person within its jurisdiction the equal protection of the laws" for Count I. Complaint at 21 (citing U.S. Const. amend. XIV and § 1983).[6]

---

[5] While unclear, it appears that Plaintiff Jonathan Daniels was charged with a second degree misdemeanor that carried a maximum sentence of sixty days in jail. (Doc. 14.1 at 1); J.P.C. v. State, 773 So. 2d 112, 113 (Fla. 1st DCA 2000). Such a small span of time demonstrates why it is almost impossible for Plaintiff Daniels, and those similarly situated, to successfully bring their alleged constitutional violations to the Court before release, much less have them decided.

[6] The Eleventh Circuit recently opined that the analysis of challenges to the setting of pretrial bail through the lens of the Eighth Amendment might be more advantageous for the defendants because the "Excessive Bail Clause 'says nothing about whether bail shall be available at all' but '"merely [ ] provide[s] that bail shall not be excessive in those cases where it is proper to grant bail.'" Walker v. City of Calhoun, GA, No. 17-13139, 2018

Plaintiffs' reliance on the "hybrid analysis" of due process and equal protection principles is proper under the current binding precedent in this circuit because Plaintiffs challenge the process by which their bail was set regarding: (1) the predetermined Bond Schedule; and (2) judges at J-1 who do not consider an arrestee's ability to pay. See Walker v. City of Calhoun, GA, No. 17-13139, 2018 WL 4000252, at *4 (11th Cir. Aug. 22, 2018) (published) ("'[T]he demands of equal protection of the laws and of due process prohibit depriving pre-trial detainees of the rights of other citizens to a greater extent than necessary to assure appearance at trial and security of the jail[.]'") (quoting Pugh v. Rainwater, 572 F.2d 1053, 1056 (5th Cir. 1978)).

Consistent with, if not even more protective than the Eighth and Fourteenth Amendments, Florida Statutes provide that there is a presumption of pretrial release on "nonmonetary conditions for any person who is granted pretrial release unless such person is charged with a dangerous crime . . . ." Fla. Stat. § 907.041(3). When an individual is released on monetary conditions then the amount set must be "necessary to [1] assure the presence of the person at trial or at other proceedings, [2] to protect the community from risk of physical harm to persons, [3] to assure the presence of the accused at trial, or [4] to assure the integrity of the judicial process." Id. (alteration added). Inherent in determining what amount is necessary to, but not beyond what is needed to, for example, assure the presence of the accused at trial, is an individual's financial condition. See id.; see also Fla. Const. art. I, § 14 ("Unless charged with a

---

WL 4000252, at *6 (11th Cir. Aug. 22, 2018) (published) (quoting Salerno, 481 U.S. at 754). Yet, a reading of the Eighth Amendment which limits its application to only those situations where bail is allowed would invite the complete denial of bail and the exact evil its existence should prevent. Accord. Salerno, 481 U.S. at 755 ("[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions."); Fla. R. Crim. P. 3.131 (enumerating "financial resources" as one of the criteria courts can consider in determining bail). In Florida, individuals may petition for review of the conditions of their prerelease set at J-1, including the amount of bail required. Fla. R. Crim. P. 3.131; see also Complaint at 10 (acknowledging that "a defense attorney can file a motion for reduction of the money bail amount[ ]"); Bynum v. Ryan, 954 So. 2d 1225, 1226 (Fla. 3d DCA 2007) (granting a petition for habeas corpus for pretrial release and remanding to the trial court to set a "reasonable bond taking into consideration the criteria" set forth by Florida Statutes).

Understanding Florida law is critical to the Court's determination as to whether the Younger abstention doctrine requires the Court to abstain from interfering with the cases involving the pretrial detention system in Duval County, Florida.[7] The Younger abstention doctrine requires federal courts to abstain from exercising jurisdiction when doing so would cause "undue interference with state proceedings." New Orleans Pub. Serv. Inc. v. Council of New Orleans, 491 U.S. 350, 359 (1989). Such abstention, the Supreme Court recognized, is required by "[o]ur Federalism['s]" notion of comity, that is, "a proper respect for state functions" and "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Green v. Jefferson Cty. Comm'n, 563 F.3d 1243, 1250 (11th Cir. 2009). Still, courts confronted with the potential application of Younger must

---

[7] Younger v. Harris, 401 U.S. 37, 39 (1971).

not neglect the Supreme Court's admonition that federal courts have a "virtually unflagging" obligation to adjudicate those cases properly brought within their jurisdiction. New Orleans Pub. Serv., Inc., 491 U.S. at 359.

The Younger abstention doctrine is applicable to both criminal proceedings and to non-criminal proceedings when important state interests are involved. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003). A court may abstain from granting injunctive and declaratory relief under Younger where: (1) the state proceeding is ongoing; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity to raise a constitutional challenge in the state court proceedings. Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258, 1261 (11th Cir. 1997) (citing Middlesex County Ethics Comm., 457 U.S. at 432); see also Spencer v. Olin, 616 F. App'x 401, 402 (11th Cir. 2015) ("Younger and its progeny generally direct federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings.") (citing Samuels v. Mackell, 401 U.S. 66, 73 (1971)); Dixon v. Haworth, No. 8:09-cv-1017-T-30EAJ, 2009 WL 4730546, at *1 (M.D. Fla. Dec. 4, 2009).[8] If indeed the state proceedings are ongoing, these elements appear to be satisfied here. See Doscher v. Menifee Circuit Court, 75 F. App'x 996 (6th Cir. 2003) (Younger abstention applied to debtor's civil rights action alleging state court

---

[8] While underlying state court criminal cases against the named Plaintiffs are no longer pending, the Court treats the claims as ongoing class claims because that is how they are presented in the Complaint and for the same reasoning undergirding the Court's decision to find that these claims are not moot. To the extent that Plaintiffs argue Younger is inapplicable, then their claims must fail pursuant to Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and their progeny. See, e.g., Helton v. Ramsay, 566 F. App'x 876, 878 (11th Cir. 2014).

violated his rights during foreclosure proceeding, where foreclosure action was pending in state court, proceeding involved matter of state interest, and debtor had adequate opportunity to raise his challenges to proceedings; debtor made clear that he wanted district court to review the state court foreclosure action); McKinnon v. Wells Fargo Bank, N.A., No. 6:10-cv-325-Orl-28DAB, 2010 WL 731801, at *1 (M.D. Fla. March 1, 2010) (Younger abstention elements satisfied where ongoing state foreclosure proceedings "implicate important state interests" and "provide the plaintiff an adequate opportunity to litigate federal claims"); Dixon, 2009 WL 4730546, at * 1 (plaintiffs "have the opportunity to raise their constitutional and evidentiary claims in the foreclosure actions, and appeal any rulings deemed improper").

Plaintiffs rely heavily on Pugh v. Rainwater, 483 F.2d 778, 782 (5th Cir. 1973), aff'd in part, rev'd in part sub nom. Gerstein, 420 U.S. 103, in which the Fifth Circuit Court of Appeals held that Younger did not preclude the district court's consideration of the plaintiffs' claim that their pretrial detention was in violation of the United States Constitution. In reaching its conclusion, the court focused on the fact that the plaintiffs had no recourse at the state level. Id. ("If these plaintiffs were barred by Younger from this forum, what relief might they obtain in their state court trials?"). Likewise, the Eleventh Circuit Court of Appeals held that the district court did not abuse its discretion in declining to apply Younger because the plaintiff "merely asks for a prompt pretrial determination of a distinct issue, which will not interfere with subsequent prosecution." Walker, No. 17-13139, 2018 WL 4000252, at *4.

Unlike the plaintiffs in Pugh, Plaintiffs in this case had the ability to seek relief through a petition to the appellate state courts and through a motion for reconsideration

of bond conditions. This is exactly what happened when Plaintiff James Davis had his bond amount originally set at $5,003.00 and then was released on his own recognizance several days later. Complaint at 6; (Doc. 14.1 at 4). Similarly, the defendants in Norton-Nugin v. State, 179 So. 3d 557, 558 (Fla. 2d DCA 2015), successfully challenged the amount of bond required by the trial court judge through a writ of habeas corpus, which was considered and decided in advance of the defendants' trial. The rulings in Norton-Nugin and Bynum are not anomalous. See, e.g., Sylvester v. State, 175 So. 3d 813, 814 (Fla. 5th DCA 2014) (granting a petition for habeas corpus and requiring, among other things, that the trial court consider the defendant's financial resources). Accordingly, the available state court remedies in this case make it distinct from Pugh.

Similarly, the Court acknowledges that the Eleventh Circuit Court of Appeals held that the district court did not abuse its discretion in finding that Younger did not readily apply to a federal court challenge of the City of Calhoun, Georgia's pretrial detention system. In reaching its conclusion, the court in Walker emphasized that its review was for an abuse of discretion, and that the relief sought would not require pervasive federal supervision of state court criminal proceedings. No. 17-13139, 2018 WL 4000252, at *4. The relief sought in this case, to have effect, would require this federal court to ensure that state court judges considered an arrestee's financial condition when setting bail. But, Plaintiffs are silent as to what comes next and how this Court would hold the state courts to this standard. Say the state trial court errs; does this Court then usurp the role of Florida's trial court judges to reconsider bond conditions or Florida's District Court of Appeals' ability to consider petitions for writs of habeas corpus? Is this Court prepared

to haul the state court judges into the federal courthouse under threat of sanctions, which, arguably, could include jail sentences? [9]

To be sure, Plaintiffs' Complaint, taken as true, raises serious and concerning allegations. If the judges in Duval County, Florida are not considering an accused's financial ability to post a bond when setting bond amounts, then they are violating not only Florida's Constitution and its rules of Criminal Procedure, but arguably they act in violation of the Eighth and Fourteenth Amendments to the United States Constitution. However, Florida provides relief for Plaintiffs and it is clear that granting Plaintiffs the relief they seek in this Court would unduly "disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio . . . ." See O'Shea, 414 U.S. at 501 (1974).

Finally, appeal to this Court as opposed to the avenues of relief available in the state courts is not likely to result in quicker or more effective relief. Though not the gravamen of their Complaint, Plaintiffs mention that it took several days for Plaintiff Davis to be released on his own recognizance. However, reconsideration is just that and does not run afoul of the "prompt" initial consideration required to determine probable cause upon an individual's arrest as described in Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). The requirement that probable cause be determined within 48 hours also applies to the setting of bail. Walker, No. 17-13139, 2018 WL 4000252, at *14. In this instance, Plaintiffs state that their bail was considered within 24 hours and that the judges are free to deviate from the Bond Schedule.

---

[9] Of course these questions are in a vacuum and do not consider Defendant Mahon's argument regarding the applicability of judicial immunity.

Therefore, their complaint on this point is that they could not obtain release before 24 hours. Being released before 24 hours has elapsed is not a constitutional guarantee. Indeed, the Bond Schedule acts as an early pretrial release, though Plaintiffs rightly note that its benefits are denied to them solely on the ability of their financial status. However, the Court cannot say the Bond Schedule is unreasonable for "preferring a judicial hearing to a purely paper-based process for evaluating indigency[,]" which is the result when an arrestee cannot post the predetermined bond amount. See Walker, No. 17-13139, 2018 WL 4000252, at *15.[10]

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 13 and 14) are **GRANTED**.[11]

2. This Case is **DISMISSED without prejudice**. The Clerk of the Court shall **TERMINATE** any pending motions and close the file.

**DONE and ORDERED** in Jacksonville, Florida this 11th day of September, 2018.

BRIAN J. DAVIS
United States District Judge

---

[10] In Walker, the court refused to apply heightened scrutiny to the city's use of a master bond schedule even though its use allowed "speedy" release for the affluent and denied it to the indigent because the indigent arrestee can still raise his claim in a timely manner at the probable cause hearing. No. 17-13139, 2018 WL 4000252, at *9.

[11] The Court presumptively treated Plaintiffs and Defendant Mahon as members of a potential class in light of Plaintiffs' Motions to Certify Class (Docs. 40 and 41). These Motions are denied as moot in light of this Order.

2
Copies furnished to:

Counsel of Record
/p